FILED
2017 Aug-25  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
FILED IN OFFICE
PROBATE COURT

MAR 2 9 2017

ALAN L. KING
Judge of Probate
E.O.D.
```

IN THE PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

IN THE MATTER OF:                    )      CASE NO. 196712
C. Porter Schutt and Phyllis         )
Dupont Schutt Trust Dated September  )
16, 1971 for the benefit of the      )
issue of Sarah Schutt Harrison,      )
Specifically: Trust for the benefit  )
of Aimee Harrison Hutson (now known  )
 as Aimee Harrison Parris)           )

PETITION FOR FINAL SETTLEMENT OF CORPORATE CO-TRUSTEE OF THE
SCHUTT/HARRISON FAMILY TRUST DATED SEPTEMBER 16, 1971 FOR THE BENEFIT OF
AIMEE HARRISON PARRIS AND ISSUE, DISCHARGE OF CORPORATE CO-TRUSTEE UPON
REMOVAL AND CONFIRMATION OR RATIFICATION OF SUCCESSOR TRUSTEE.

     Comes the Petitioner, BancorpSouth Bank, the present sole corporate
co-trustee of the above styled intervios trust having been appointed as
such on September 17, 2010 (copy of which is attached as Exhibit "A")
which postdated this Court's Order in this case on January 28, 2010, and
expressly invoking the equity jurisdiction of this Honorable Court,
respectfully represents and shows unto this Court the following facts:

1.   By Order of this Court on January 28, 2010, the trust for the
     benefit of Aimee Harrison Parris was bifurcated from the C. Porter
     Schutt and Phyllis Dupont Schutt Trust Dated September 16, 1971 for
     the benefit of the issue of Sarah Schutt Harrison of which Aimee
     Harrison Parris (hereinafter also referred to as Aimee) was one of
     the four issue. The separate trust for the benefit of Aimee and her
     issue has been designated as the "Schutt/Harrison Trust FBO Aimee
     Parris Trust (hereinafter sometimes referred to as "Aimee's
     Trust").

2.   The Petitioner has served as the corporate co-trustee of Aimee's
     Trust since September 17, 2010 as referenced in Exhibit "A" above.
     Three individuals: James L. Parris, G.D. Varn, III and James V.
     Sease, Jr. also presently serve as co-trustees with the Petitioner.

3.   The Petitioner learned on or about February 24, 2017 of Aimee's
     death of February 9, 2017  while a resident of South Carolina.
     Subsequently, the Petitioner was notified by James L. Parris,
     husband and co-trustee that Aimee had adopted her step-son Samuel
     S. Parris, age 28 who is the son of James L. Parris.

Ex 1

4.   On March 3, 2017, the Petitioner received a memorandum dated March 2, 2017 from the three individual trustees exercising their right to remove the Petitioner as co-trustee as permitted under the terms of Aimee's Trust. At the time of the filing of this Petition, the Petitioner has not been informed of an appointment of a successor corporate co-trustee. The Petitioner maintains control and custody of all trust property.

5.   As supplemental to this Petition, Petitioner will file a certified copy of: Aimee's death certificate and the adoption record of Samuel S. Parris as Aimee had no biological lineal descendants at the time of her death and which would have but for the adoption caused her trust to terminate for failure of lineal descendants and the remainder interest would have been transferred to the contingent remainder beneficiaries, namely the three other identical trust for Aimee's siblings, created in the above referenced trust for the benefit of the issue of Sarah Schutt Harrison being Phyllis Harrison Ballantine, Renee DuPont Harrison and Scott P. Harrison and referred to in this Court's Order of January 28, 2010 as Renee's Trust, Scott's Trust and Phyllis' Trust. These three trusts are currently trusteed by Oakworth Capital Bank, Mobile, Alabama.

6.   The Petitioner accepted the sole corporate co-trusteeship of Aimee's Trust on September 17, 2010 and has served continuously in that capacity. The principal place of administration of Aimee's Trust at all times since 2010 has been Jefferson County, Alabama.

7.   The following is a true and correct list of all of the qualified beneficiaries, fiduciaries and parties in interest to the best of petitioner's knowledge:

Samuel S. Parris, son of Aimee and her only lineal descendant, 103 Church Street, Mount Pleasant, SC 29465, over the age of nineteen (19) and of sound mind. Also in his capacity as representative of his unborn, unconceived, and unascertainable lineal descendants who may become beneficiaries.

James L. Parris, co-trustee, 337 N. Civitas Street, Mount Pleasant, SC 29468, over the age of nineteen (19) and of sound mind.

G.D. Varn, III, co-trustee, 1685 Broxton Bridge Road, Ehrhardt, SC 29081, over the age of nineteen (19) and of sound mind.

James V. Sease, Jr, co-trustee, 39 Depot Avenue, Ehrhardt, SC 29081, over the age of nineteen (19) and of sound mind.

Contingent Remainder Beneficiary:

**Ex 2**

Oakworth Capital Bank as Trustee of the Renee's Trust, Scott's Trust and Phyllis' Trust, One Saint Louis Street, Suite 3200, Mobile, AL 36602

8. The petitioner respectfully submits to this Court the following report of its acts and doing as trustee of Aimee's Trust from September 18, 2010 to December 31, 2016, as shown in the accounting for said period attached to this petition as Exhibit "B".

9. By way of recapitulation, the petitioner reports a balance on hand in the trust the sum of Sixteen Hundred Ninety Three & 40/100 Dollars ($ 1,693.40) and real property and securities less liabilities having a cost basis of $ 569,161.55 (*includes $1,390.70 of cash shown above) as of December 31, 2016 from which is to be subtracted the cost of this petition, final settlement and such fees and awards to the petitioner and its attorney as may be fixed, determined and allowed by this Court with respect to services and expenses up to the date appointed for this final settlement and relief sought in this petition.

10. Petitioner will submit a supplemental report on Aimee's Trust from January 1, 2017 to the month-end before the hearing date set for this petition.

11. This petition is filed under Alabama Code Title 19-3B-201,205 & 704 and other related authority of the Alabama Uniform Trust Code Title 19-3B-101.

WHEREFORE, the Petitioner prays that this Court will in addition to any such other orders and relief in law or equity so granted including ratification of Samuel S. Parris as the lineal descendant of Aimee:

1. Appoint a day for hearing this final settlement, give such notice of same as is required by law, appoint a guardian ad litem to represent the interest of any contingent minor remainder beneficiaries, examine and audit said report of account, state the same and render a decree passing said account as stated and record same, and fix, determine and allow the Petitioner as trustee of Aimee's Trust and its attorney such fees and awards as may appear fair and just with respect to their services and expenses in the premises;

2. Requests that the said BancorpSouth Bank, the petitioner's removal be accepted by the Court and be henceforth discharged from all other or further liability for or on account of its administration of Aimee's Trust as co- trustee;

3.   Require that the current three individual co-trustee appoint a successor corporate co-trustee to the Petitioner and the Court ratify and confirm same and incorporate it into any final order by this Court.

Petitioner prays for such other, further, or more general relief to which it may be entitled in the premises.

Attorney for Petitioner:

_____
John R. Martin
Najjar Denaburg, P.C.
2125 Morris Ave.
Birmingham, Alabama 35203
205-250-8465

Petitioner:
BancorpSouth Bank

_____
Bryant L. Luquire
Senior Vice President &
Regional Executive

4

**Ex 4**

<u>VERIFICATION</u>

STATE OF ALABAMA   )
JEFFERSON COUNTY   )

    Before me, the undersigned, a notary public in and for said county in said state, personally appeared Bryan L. Luquire, Senior Vice President and Regional Executive of BancorpSouth Bank, who being first duly sworn, makes oath that he has read the foregoing petition and knows the contents thereof, and that he is informed and believes, and upon such information and belief, avers that the facts alleged therein are true and correct and with full authority on behalf of BancorpSouth Bank.

    Subscribed   and   sworn   to   before   me   this   20th   day   of _March_, 2017.

                                                   *Misty Poe*
                                              Notary Public
                                              My commission expires: _10/13/2020_

(SEAL)

Ex 5

Reco... .In DEED BK 799 PG 584, 07/25/20    1:04:00 AM
GREG NORRIS, Judge of Probate, Monroe County, AL

*EX HUBIT "A"*

## CONFIRMATION OF CHANGE OF CORPORATE CO-TRUSTEE OF
## SCHUTT / HARRISON FAMILY TRUST DATED SEPTEMBER 16, 1971
## FOR BENEFIT OF AIMEE HARRISON PARRIS AND ISSUE

**WHEREAS,** on June 29, 2010, Wells Fargo Bank, N.A., acting in its capacity as Trustee of that certain C. Porter Schutt and Phyllis DuPont Schutt Trust under Agreement dated September 16, 1971, as modified by Order of the Circuit Court of Mobile County, Alabama dated July 2, 2003, held for the benefit of the issue of Sarah Schutt Harrison (the "Schutt Harrison Trust"), executed three separate Trustee's Confirmation Deeds to convey certain real property located in Conecuh, Monroe, and Wilcox Counties in the State of Alabama to Wells Fargo Bank, N.A., Trustee of that certain C. Porter Schutt and Phyllis DuPont Schutt Trust held for the benefit of Aimee Harrison Parris (the "Beneficiary") and her issue under Agreement dated September 16, 1971, as modified by Order of the Circuit Court of Mobile County, Alabama dated July 2, 2003, and further modified by Judgment of the Probate Court of Jefferson County, Alabama dated January 28, 2010 (herein referred to as the "Schutt / Harrison Trust f/b/o Aimee Harrison Parris"), **G.D. Varn III, James V. Sease** and **James L. Parris,** as individual Trustees appointed by the Beneficiary of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, as grantees;

**WHEREAS,** on August 23, 2010, the Trustee's Confirmation Deed related to the real property located in Conecuh County, Alabama was recorded in Deed Book 2010, Page 448 in the Office of the Probate Judge of Conecuh County, Alabama;

**WHEREAS,** on August 23, 2010, the Trustee's Confirmation Deed related to the real property located in Monroe County, Alabama was recorded in Deed Book 790, Page 415 in the Office of the Probate Judge of Monroe County, Alabama;

**WHEREAS,** on August 23, 2010, the Trustee's Confirmation Deed related to the real property located in Wilcox County, Alabama was recorded in Deed Book 11Q, Page 355 in the Office of the Probate Judge of Wilcox County, Alabama;

**WHEREAS,** on August 26, 2010, Wells Fargo Bank, N.A. resigned as Trustee of the Schutt / Harrison Trust f/b/o Aimee Harrison Parris, as reflected on **Exhibit A** attached hereto;

**WHEREAS,** on September 7, 2010, G.D. Varn III, James V. Sease and James L. Parris, as the individual Trustees of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, appointed BancorpSouth as the successor corporate Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, as reflected on **Exhibit B** attached hereto;

**WHEREAS,** on September 17, 2010, BancorpSouth Bank accepted its appointment as the successor corporate Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris as reflected on **Exhibit C** attached hereto;

1

Recording Fee 37.00, TOTAL 37.00

NOW, THEREFORE, the undersigned execute this document to confirm that BancorpSouth Bank is the successor corporate Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris.

> WELLS FARGO BANK, N. A., as Predecessor Corporate Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris
>
> By: _Dean Johnson_____
>
> Its: _Vice President_____

STATE OF ALABAMA )
                   :
JEFFERSON COUNTY )

I, the undersigned, a notary public in and for said county in said state, hereby certify that _Dean Johnson_____, whose name as _Vice President_____ of WELLS FARGO BANK, N.A., acting in its capacity as Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he/she, as such officer and with full authority, executed the same voluntarily as the act of said WELLS FARGO BANK, N.A., acting in its representative capacity as aforesaid.

Given under my hand and official seal this 7th day of October, 2010.

_James Anthony Jurgensen_____
Notary Public

[NOTARIAL SEAL]            My commission expires: _March 17th 2014_

DEED   799   585

2

BANCORPSOUTH BANK, as Successor Corporate
Trustee of the Schutt / Harrison Family Trust f/b/o
Aimee Harrison Parris

By: _____

Its: _____

STATE OF ALABAMA          )

JEFFERSON COUNTY          )

    I, the undersigned, a notary public in and for said county in said state, hereby certify that
_____, whose name as Sr. Vice President
of BANCORPSOUTH BANK, acting in its capacity as the Successor Corporate Trustee of the
Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, is signed to the foregoing
instrument, and who is known to me, acknowledged before me on this day that, being informed
of the contents of said instrument, he/she, as such officer and with full authority, executed the
same voluntarily as the act of said BANCORPSOUTH, acting in its representative capacity as
aforesaid.

    Given under my hand and official seal this 8th day of October, 2010.

_____
Notary Public

[NOTARIAL SEAL]

My commission expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Aug 18, 2014

DEED    799    586

3

Ex 8

_____
G.D. Varn III, as Individual Trustee of
the Schutt / Harrison Family Trust f/b/o Aimee
Harrison Parris

STATE OF ___SC_____ )
                                              :
___Bamberg_____COUNTY )

I, the undersigned, a notary public in and for said county in said state, hereby certify that G.D. Varn III, whose name is signed to the foregoing instrument as Individual Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this ___19th___ day of ___May___,
2010.

_____
Notary Public

DEED    799    587

4

Ex 9

James V. Sease, Jr., as Individual Trustee of
the Schutt / Harrison Family Trust f/b/o Aimee
Harrison Parris

STATE OF _____ SC _____        )
                                     :
_____ Bamberg _____ COUNTY         )

I, the undersigned, a notary public in and for said county in said state, hereby certify that James V. Sease, Jr., whose name is signed to the foregoing instrument as Individual Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this ___19th___ day of ___October___
2010.

_____
Notary Public

[NOTARIAL SEAL]                    My commission expires: ___1-30-18___

DEED    799    588

5

James L. Parris, as Individual Trustee of
the Schutt / Harrison Family Trust f/b/o Aimee
Harrison Parris

STATE OF _____SC_____ )
          :
_____Bamberg_____ COUNTY )

         I, the undersigned, a notary public in and for said county in said state, hereby certify that James L. Parris, whose name is signed to the foregoing instrument as Individual Trustee of the Schutt / Harrison Family Trust f/b/o Aimee Harrison Parris, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

         Given under my hand and official seal this _19th_ day of _Oct_ 2010.

_____
Notary Public

[NOTARIAL SEAL]

My commission expires: _1-31-18_

DEED 799 589

6

I/2091583.1

Ex 11

*Exhibit A*

## RESIGNATION OF TRUSTEE

Wells Fargo Bank, N.A., successor in interest to Wachovia Bank, N.A., ("Wells Fargo") is the Successor Co-Trustee of the Schutt/Harrison Family Trust Under Irrevocable Agreement Dated September 16, 1971 for the benefit of Aimee H. Parris (the "Trust"). Pursuant to Section VII (I) of the Trust, Wells Fargo is authorized to resign as Trustee of the Trust. Wells Fargo Bank hereby delivers its written notice of resignation to G.D. Varn III, James V. Sease, and James L. Parris, who are the individual co-trustees of the Trust, such resignation to be effective upon the earlier of the acceptance of appointment of successor corporate trustee by Bancorpsouth, or the expiration of thirty days after receipt of this notice of resignation.

Dated: _August 26, 2010_

WELLS FARGO BANK, N.A.

By: _____
Dean Johnson
Vice President and Trust & Fiduciary
Specialist

STATE OF ALABAMA          §
                          §
COUNTY OF JEFFERSON       §

This instrument was acknowledged before me on this 26th day of _August_, 2010, by Dean Johnson, Vice President and Trust & Fiduciary Specialist of Wells Fargo Bank, N.A.

_____
Notary Public, State of Alabama
My commission expires: _March 17th 2014_

DEED    799    590

*Exhibit B*

## BANCORPSOUTH AS SUCCESSOR TRUSTEE OF
## THE SCHUTT/HARRISON FAMILY TRUST FOR THE BENEFIT OF
## AIMEE HARRISON PARRIS DATED SEPTEMBER 16, 1971

WHEREAS, C. Porter Schutt and Phyllis duPont Schutt, as Grantors, formed the Schutt/Harrison Family Trust for the Benefit of Aimee Harrison Parris dated September 16, 1971 (hereinafter referred to as the "Trust Agreement" or the "Trust"); and

WHEREAS, Wachovia Bank, NA, aka Wells-Fargo, prior Corporate Trustee has submitted its unrequested resignation, and after due investigation, the Beneficiary and Individual Co-Trustees have designated as successor CorporateTrustee under the Section VII – Paragraph I section of the Trust Agreement: BancorpSouth Bank.

NOW, THEREFORE, we, Aimee Harrison Parris, Beneficiary, G. D. Varn III, James V. Sease, Jr., and James L. Parris, the Individual Co-Trustees, agree and understand that BancorpSouth Bank, as successor Trustee, need not examine the account records or acts of any predecessor Trustee, nor shall it be liable for any act or omission to act on the part of any previous Trustee.

AND FURTHER, BancorpSouth Bank shall be indemnified and held harmless from the principal of the Trust for following the suggestions or instructions of a majority of the Individual Co-Trustees.

IN WITNESS WHEREOF, on this 7th day of September, 2010, the undersigned has executed this instrument in accordance with the above-described conditions.

_____
Aimee Harrison Parris, Beneficiary

_____
G. D. Varn III, Co-Trustee

_____
James V. Sease, Jr., Co-Trustee

_____
James L. Parris, Co-Trustee

I, the undersigned, a Notary Public in and for the State of South Carolina at Large, hereby certify that **Aimee Harrison Parris**, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

-1-

(B0170467.1)

DEED   799   591

Given under my hand this ___7ᵗʰ___ day of September, 2010.

Helen K Beard
NOTARY PUBLIC

[SEAL]
My Commission Expires:_____ 1-30-18

DEED   799   592

-2-

{A0176467.1}

I, the undersigned, a Notary Public in and for the State of South Carolina at Large, hereby certify that G. D. Varn III , whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this 7⁴ᵗʰ day of September, 2010.

Helen K Beard
NOTARY PUBLIC

[SEAL]
My Commission Expires:____ 1-30-18 ____

I, the undersigned, a Notary Public in and for the State of South Carolina at Large, hereby certify that James V. Sease, Jr., whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this 8ᵗʰ day of September, 2010.

Helen K Beard
NOTARY PUBLIC

[SEAL]
My Commission Expires:____ 1-30-18 ____

I, the undersigned, a Notary Public in and for the State of South Carolina at Large, hereby certify that James L. Parris, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this 8ᵗʰ day of September, 2010.

Helen K Beard
NOTARY PUBLIC

[SEAL]
My Commission Expires:____ 1-30-18 ____

DEED    799    593

-3-

{00TN467.1}

Ex 15

**BANCORPSOUTH BANK**, as successor Trustee

By: BRYAN L. LUQUIRE
Its: Senior Vice President & Regional Trust Executive

STATE OF ALABAMA        )
                                         :
JEFFERSON COUNTY        )

    I, the undersigned, a Notary Public in and for the State of Alabama at Large, hereby certify that BRYAN L. LUQUIRE, whose name as Senior Vice President & Regional Trust Executive of BANCORPSOUTH BANK is signed to the foregoing instrument as Trustee, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument and with full authority, he/she executed the same voluntarily for and on behalf of the Bank on the day the same bears date.

    Given under my hand this *16th* day of September, 2010.

*Cynthia K Mitchell*
NOTARY PUBLIC

[SEAL]
My Commission Expires:_____

Cynthia K. Mitchell
Notary Public
Alabama State at Large
My Commission Expires March 16, 2011

DEED    799    594

-4-

[00176467.1]

*Exhibit C*

CONSENT TO APPOINTMENT OF BANCORPSOUTH AS SUCCESSOR
TRUSTEE OF THE SCHUTT/HARRISON FAMILY TRUST FOR THE BENEFIT
OF AIMEE HARRISON PARRIS DATED SEPTEMBER 16, 1971:

By causing this document to be executed by its duly authorized officer, BancorpSouth
hereby consents to its appointment as successor trustee to the Schutt/Harrison Family
Trust for the Benefit of Aimee Harrison Parris dated September 16, 1971.

BancorpSouth:

By: _____

Title: _____ Vice President

Sept. 17, 2010

STATE OF ALABAMA )
                          :
JEFFERSON COUNTY )

I, the undersigned, a Notary Public in and for the State of Alabama at Large,
hereby certify that **BRYAN L. LUQUIRE**, whose name as Senior Vice President &
Regional Trust Executive of **BANCORPSOUTH BANK** is signed to the foregoing
instrument as Trustee, and who is known to me, acknowledged before me on this day
that, being informed of the contents of the instrument and with full authority, he executed
the same voluntarily for and on behalf of the Bank on the day the same bears date.

Given under my hand this ___17th___ day of September, 2010.

NOTARY PUBLIC

[SEAL]                    NOTARY PUBLIC STATE OF ALABAMA AT LARGE
My Commission Expires: _____  MY COMMISSION EXPIRES: Aug. 18, 2014

DEED   799   595

EXHIBIT "B"
SCHUTT/HARRISON TRUST
 FBO AIMEE PARRIS & ISSUE
ACCOUNT # 43-0439-01-8
& SUB ACCT. # 43-0439-02-6

Attached Accountings
Sept. 17, 2010 to Dec. 31,2016
1. Sub Cash Account
attached below

2. General Transactions Report
Sept. 17, 2010 to Dec. 31,2016
attached below

Assets and Liabilities 12/31/12016
Book Value

| | |
|---|---:|
| Cash & Eqv. M. Mkt | 1,390.70 |
| Real Estate and Securities | 1,198,964.87 |
| Less Notes and Mortgages | -631,194.02 |
| **Net book value of trust** | **569,161.55** |
| General Trans Acct. | 1,390.70 |
| Sub Acct. | 302.7 |
| Total Cash & Eqv. In both accounts | **1,693.40** |

 **BancorpSouth**
Wealth Management

## SCHUTT/HARRISON FAMILY TRUST

Account Number:          43-0439-01-8
Statement Period:     01/01/16 - 12/31/16

Administrator:
    Sarah Morris 205-437-2642
    Sarah.Morris@bxs.Com

AIMEE PARRIS
C/O JAMES L. PARRIS
P.O. BOX 2460
MT. PLEASANT SC 29465

| Portfolio Summary | | | |
|---|---|---|---|

FIXED INCOME
EQUITIES
CASH & EQUIV.

REAL ESTATE

| Value of Portfolio | | |
|---|---|---|
| Description | Market Value | % of Account |
| Cash & Equiv | 1,390.70 | 0.0% |
| Equities | 3,902.55 | 0.1% |
| Fixed Income | 1,179.29 | 0.0% |
| Real Estate | 4,037,096.00 | 118.3% |
| Liabilities | -631,194.02 | -18.5% |
| Total Portfolio | $ 3,412,374.52 | 100.0% |
| Accrued Income | 3.15 | |
| Total Valuation | $ 3,412,377.67 | |

| Market Reconcilement | | |
|---|---|---|
| | Current Period | Year To Date |
| Beginning Market Value | $ 3,387,819.75 | $ 3,387,819.75 |
| Income | | |
| Dividends | 65.87 | 65.87 |
| Capital Gains Distribution | 86.05 | 86.05 |
| Contributions | 43,536.99 | 43,536.99 |
| Disbursements | | |
| To/For Beneficiary | -8,650.26 | -8,650.26 |
| Expenses | -21,419.60 | -21,419.60 |
| Fees | -7,059.00 | -7,059.00 |
| Realized Gains/(Losses) | -13.70 | -13.70 |
| Non-Cash Asset Changes | -27,812.74 | -27,812.74 |
| Accrued Income | 3.12 | 3.12 |
| Unrealized Appreciation/(Depreciation) | 45,821.19 | 45,821.19 |
| Ending Market Value | $ 3,412,377.67 | $ 3,412,377.67 |

006

**Ex 19**


**BancorpSouth**
Wealth Management

## SCHUTT/HARRISON FAMILY TRUST

Account Number: 43-0439-01-8
Statement Period: 01/01/16 - 12/31/16

| Portfolio Investments | | | | |
| --- | --- | --- | --- | --- |
| Asset Description | Units | Market Value Cost | Est. Annual Income Accruals | Current Yield |
| Cash and Equivalent | | | | |
| Principal Cash | | -118,782.00 -118,782.00 | 0.00 | 0.00% |
| Income Cash | | 118,782.00 118,782.00 | 0.00 | 0.00% |
| G/S Financial Square Govt Mmkt #465 | 1,390.700 | 1,390.70 1,390.70 | 6.00 0.37 | 0.45% |
| Total Cash and Equivalent | | $ 1,390.70 $ 1,390.70 | 6.00 0.37 | 0.45% |
| | | | | |
| Equities | | | | |
| Fidelity Advisor New Insight S Inst | 21.772 | 586.76 614.41 | 2.00 | 0.42% |
| JHANCOCK3 Intl Growth I | 25.354 | 516.21 574.78 | 0.00 | 0.00% |
| John Hancock Disciplined Value | 22.926 | 444.08 416.34 | 0.00 | 0.00% |
| John Hancock Disciplined Value Mid Cap | 10.183 | 218.63 213.84 | 0.00 | 0.00% |
| Meridian Small Cap Growth Investor Share | 10.083 | 136.52 133.30 | 0.00 | 0.00% |
| Franklin Mutual Discovery Z Fund | 19.898 | 619.42 613.06 | 13.00 | 2.20% |
| T. Rowe Price Growth Stock | 8.271 | 440.43 450.01 | 0.00 | 0.08% |
| T. Rowe Price Equity Income Fund | 18.834 | 592.89 590.83 | 12.00 | 2.03% |
| T. Rowe Price Mid Cap Growth Fund | 2.713 | 204.48 211.04 | 0.00 | 0.00% |
| Undiscovered Mgrs Behavioral Value | 2.217 | 143.13 136.29 | 1.00 | 0.99% |
| Total Equities | | $ 3,902.55 $ 3,953.90 | 28.00 0.00 | 0.77% |

**Ex 20**


**BancorpSouth**
Wealth Management

## SCHUTT/HARRISON FAMILY TRUST

Account Number:          43-0439-01-8
Statement Period:     01/01/16 - 12/31/16

### Portfolio Investments

| Asset Description | Units | Market Value Cost | Est. Annual Income Accruals | Current Yield |
|---|---|---|---|---|
| **Fixed Income** | | | | |
| Dodge & Cox Income | 27.418 | 372.61 382.49 | 11.00 | 3.11% |
| Fidelity Total Bond | 29.716 | 312.61 322.42 | 9.00 1.07 | 2.96% |
| John Hancock Strategic Income Opportunities I | 13.579 | 144.07 145.02 | 3.00 0.31 | 2.61% |
| Pioneer Multi-Asset Ultrashort Inc Fund | 20.722 | 206.81 207.01 | 3.00 0.94 | 1.45% |
| Pioneer Strategic Income Fund Cl Y | 13.483 | 143.19 144.81 | 5.00 0.46 | 3.51% |
| Total Fixed Income | | $ 1,179.29 $ 1,201.75 | 31.00 2.78 | 2.77% |
| **Real Estate** | | | | |
| R/E-Timberland, Monroe Co. AL 231 Acres: P20 Parcel #2002030000003.000 | 1.000 | 336,525.00 76,615.98 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 27 Acres: P4 Parcel #0404192000002.000 | 1.000 | 27,000.00 6,761.61 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 305 Acres: P22 Parcel #0805220000002.000 --- 1 Pledged --- | 1.000 | 446,393.00 76,381.15 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 13.5 Acres: P39 Parcel #0701120000003.001 | 1.000 | 16,250.00 3,380.81 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 40 Acres: P5n Parcel #0804170000003.001 | 1.000 | 63,847.00 10,017.20 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 184 Acres: P63s Parcel #2509300000007.000: #2607250001021.001 | 1.000 | 230,000.00 46,079.12 | 0.00 | 0.00% |

Page 3 of 14

**Ex 21**

 **BancorpSouth**
Wealth Management

## SCHUTT/HARRISON FAMILY TRUST

Account Number: 43-0439-01-8
Statement Period: 01/01/16 - 12/31/16

| Portfolio Investments | | | | |
|---|---|---|---|---|
| Asset Description | Units | Market Value<br>Cost | Est. Annual Income<br>Accruals | Current<br>Yield |
| R/E-Timberland, Monroe Co. AL:<br>19 Acres: P75<br>Parcel #1505160000002.000 | 1.000 | 40,213.00<br>4,758.17 | 0.00 | 0.00% |
| R/E-Timberland, Monroe Co. AL: 442<br>Acres: P91 Parcel #0505220000024.000<br>#0506230000004.000:<br>#0507260000001.001:<br>#0508270000001.001 | 1.000 | 561,350.00<br>111,189.79 | 0.00 | 0.00% |
| R/E-Timberland, Conecuh Co. AL<br>213 Acres, P64d<br>Parcel #0904170000001.000 &<br>#0904200000002.000 | 1.000 | 305,895.00<br>53,341.59 | 0.00 | 0.00% |
| R/E Timberland, Wilcox Co. AL<br>311 Acres: P1<br>Parcel #2502100000002.000<br>#2505120000002.000 | 1.000 | 698,223.00<br>77,883.73 | 0.00 | 0.00% |
| R/E-Timberland, Wilcox Co. AL:<br>316 Acres: P28<br>Parcel #2308340000004.000 | 1.000 | 435,000.00<br>79,135.88 | 0.00 | 0.00% |
| R/E-Timberland, Wilcox Co. AL<br>33 Acres: P80<br>Parcel #2307360000005.000 | 1.000 | 41,400.00<br>8,264.19 | 0.00 | 0.00% |
| R/E 337n Civitas St<br>Lot 30, MT Pleasant, SC<br>Charleston County, SC<br>Tax Parcel # 514-12-00-178<br>--- 1 Pledged --- | 1.000 | 835,000.00<br>640,000.00 | 0.00 | 0.00% |
| Total Real Estate | | $ 4,037,096.00<br>$ 1,193,809.22 | 0.00<br>0.00 | 0.00% |
| Liabilities | | | | |
| LOC FBO Schutt Harrison Trust<br>FBO Aimee Parris<br>Acct#761000901657 Original<br>Amount $50,000 | 50,000.000 | -50,000.00<br>-50,000.00 | 1,875.00 | 3.75% |
| Bxs Loan #761000915006<br>Dtd 08/24/2016 Due 08/19/2017<br>Real Estate Mtg For Residential Prop<br>MT. Pleasant , SC, Charleston County | 581,194.020 | -581,194.02<br>-581,194.02 | 0.00 | 0.00% |

**Ex 22**


**BancorpSouth**
Wealth Management

SCHUTT/HARRISON FAMILY TRUST

Account Number:          43-0439-01-8
Statement Period:    01/01/16 - 12/31/16

## Portfolio Investments

| Asset Description | Units | Market Value Cost | Est. Annual Income Accruals | Current Yield |
|---|---|---|---|---|
| Total Liabilities | | $ -631,194.02<br>$ -631,194.02 | 0.00<br>0.00 | 0.00% |
| Total Market Value | | $ 3,412,374.52<br>$ 569,161.55 | 1,940.00<br>3.15 | 0.06% |
| Total Market Value Plus Accruals | | $ 3,412,377.67 | | |

## Income Activity

| | Date | Income Cash | Principal Cash |
|---|---|---|---|
| Dividend Income | | | |
| Dodge & Cox Income | | | |
| Div .105 Per Sh on 55 Shs | 10/03/16 | 5.85 | |
| Div .097 Per Sh on 27 Shs | 12/27/16 | 2.66 | |
| Fidelity Advisor New Insight S Inst | | | |
| Div .112 Per Sh on 21 Shs | 12/12/16 | 2.44 | |
| Fidelity Total Bond | | | |
| Div To 09/30/16 | 10/04/16 | 0.39 | |
| Div To 10/31/16 | 11/04/16 | 1.19 | |
| Div To 11/30/16 | 12/01/16 | 1.05 | |
| G/S Financial Square Govt Mmkt #465 | | | |
| Div To 12/31/15 | 01/05/16 | 0.03 | |
| Div To 01/31/16 | 02/02/16 | 0.01 | |
| Div To 04/30/16 | 05/02/16 | 0.47 | |
| Div To 05/31/16 | 06/02/16 | 2.38 | |
| Div To 06/30/16 | 07/05/16 | 2.60 | |
| Div To 07/31/16 | 08/11/16 | 2.02 | |
| Div To 08/31/16 | 09/01/16 | 1.02 | |
| Div To 09/30/16 | 10/05/16 | 0.44 | |
| Div To 10/31/16 | 11/01/16 | 0.25 | |
| Div To 11/30/16 | 12/01/16 | 0.45 | |
| JHANCOCK3 Intl Growth I | | | |
| Div .191 Per Sh on 25 Shs | 12/21/16 | 4.86 | |
| John Hancock Disciplined Value | | | |
| Div .236 Per Sh on 22 Shs | 12/22/16 | 5.41 | |
| John Hancock Disciplined Value Mid Cap | | | |
| Div .194 Per Sh on 10 Shs | 12/23/16 | 1.99 | |

Ex 23



**BancorpSouth**
Wealth Management

## SCHUTT/HARRISON CASH HOLDING ACCOUNT

| | |
|---|---|
| Account Number: | 43-0439-02-6 |
| Statement Period: | 01/01/16 - 12/31/16 |

**Administrator:**
Sarah Morris 205-437-2642
Sarah.Morris@bxs.Com

AIMEE PARRIS
C/O JAMES L. PARRIS
P.O. BOX 2460
MT. PLEASANT SC 29465

### Portfolio Summary



CASH & EQUIV

### Value of Portfolio

| Description | Market Value | % of Account |
|---|---|---|
| Cash & Equiv | 302.60 | 100.0% |
| Total Portfolio | $ 302.60 | 100.0% |
| Accrued Income | 0.10 | |
| Total Valuation | $ 302.70 | |

### Market Reconcilement

| | Current Period | Year To Date |
|---|---|---|
| Beginning Market Value | $ 4,260.07 | $ 4,260.07 |
| **Income** | | |
| Dividends.......................................................................... | 1.88 | 1.88 |
| **Disbursements** | | |
| To/For Beneficiary............................................................. | -3,958.40 | -3,958.40 |
| Realized Gains/(Losses)..................................................... | 0.00 | 0.00 |
| Accrued Income................................................................. | -0.85 | -0.85 |
| Unrealized Appreciation/(Depreciation)............................. | 0.00 | 0.00 |
| Ending Market Value | $ 302.70 | $ 302.70 |

Page 1 of 3

**Ex 24**

IN THE PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

IN THE MATTER OF:                          )        CASE NO. 196712
C. Porter Schutt and Phyllis               )
Dupont Schutt Trust Dated September        )
16, 1971 for the benefit of the            )
issue of Sarah Schutt Harrison,            )
Specifically: Trust for the benefit        )
of Aimee Harrison Hutson (now known        )
 as Aimee Harrison Parris)                 )

FILED IN OFFICE
PROBATE COURT
APR 2 0 2017
ALAN L. KING
Judge of Probate
E.O.D.

AMENDED PETITION OF THAT CERTAIN PETITION FILED MARCH 29, 2017 PREVIOUSLY
    CAPTIONED AS FOLLOWS and REFERRED TO AS "ORIGINAL PETITION":

    PETITION FOR FINAL SETTLEMENT OF CORPORATE CO-TRUSTEE OF THE
SCHUTT/HARRISON FAMILY TRUST DATED SEPTEMBER 16, 1971 FOR THE BENEFIT OF
AIMEE HARRISON PARRIS AND ISSUE, DISCHARGE OF CORPORATE CO-TRUSTEE UPON
  REMOVAL AND CONFIRMATION OR RATIFICATION OF SUCCESSOR TRUSTEE.

    Copy of the "Original Petition" filed March 29, 2017 attached to this
Amended Petition.

    Comes the Petitioner, BancorpSouth Bank, the present sole corporate
co-trustee of the above styled intervios trust having been appointed as
such on September 17, 2010 (copy of which was attached as Exhibit "A" in
the Original Petition) which postdated this Court's Order in this case on
January 28, 2010, and expressly invoking the equity jurisdiction of this
Honorable Court, respectfully represents and shows unto this Court the
following facts:

    The following paragraphs are deleted in their entirety from the
    original petition and the following amendments are substituted in lieu
    thereof:

    4.   On March 3, 2017, the Petitioner received a memorandum dated
         March 2, 2017 from the three individual trustees exercising their
         right to remove the Petitioner as co-trustee as permitted under the
         terms of Aimee's Trust. On Tuesday, April 4, 2017, the Petitioner
         learned that Wilmington Trust Company has been proposed as
         successor corporate co-trustee to the Petitioner. The Petitioner
         currently maintains control and custody of all trust property.


    7. The following is a true and correct list of all of the qualified
    beneficiaries, fiduciaries and parties in interest to the best of
    petitioner's knowledge:

Ex 25

*Samuel S. Parris, son of Aimee and her only lineal descendant, 1020 E Wall Street, Mount Pleasant, SC 29464, over the age of nineteen (19) and of sound mind. Also in his capacity as representative of his unborn, unconceived, and unascertainable lineal descendants who may become beneficiaries.

James L. Parris, co-trustee, 1020 E Wall Street, Mount Pleasant, SC 29464, over the age of nineteen (19) and of sound mind.

G.D. Varn, III, co-trustee, 8 Washington Street, Ehrhardt, SC 29081, over the age of nineteen (19) and of sound mind.

James V. Sease, Jr, co-trustee, 39 Depot Avenue, Ehrhardt, SC 29081, over the age of nineteen (19) and of sound mind.

Contingent Remainder Beneficiaries:

Oakworth Capital Bank as Trustee of the Renee's Trust, Scott's Trust and Phyllis' Trust, One Saint Louis Street, Suite 3200, Mobile, AL 36602

Beneficiaries of Phyllis' Trust:

Phyllis H. Ballantine, 6245 Country Club Drive, Easton, MD 21601, over the age of nineteen (19) and of sound mind.

Eugene T. Ballantine, 2115 First Street NW, Washington, DC 20001 over the age of nineteen (19) and of sound mind.

Preston R. Ballantine, 6245 Country Club Drive, Easton, MD 21601, over the age of nineteen (19) and of sound mind.

Beneficiaries of Scott's Trust:

• Scott Preston Harrison, 209 Gun Club Lane, Richmond, VA 23221, over the age of nineteen (19) and of sound mind.

McKelvey E. Harrison, 209 Gun Club Lane, Richmond, VA 23221, over the age of nineteen (19) and of sound mind.

Samuel Harwell Harrison, c/o Scott P. Harrison, 209 Gun Club Lane, Richmond, VA 23221, a minor

Beneficiaries of Renee's Trust:

• Renee DuPont Harrison, 3712 North Broadway PMB456, Chicago, IL 60613 over the age of nineteen (19) and of sound mind.

Elijah DuPont Drake, c/o Renee DuPont Harrison, 3712 North Broadway PMB456, Chicago, IL 60613, a minor

Mason Harrison Drake, c/o Renee DuPont Harrison, 3712 North Broadway PMB456, Chicago, IL 60613, a minor

2

**Ex 26**

- * Also representing their minor child or children or unborn issue as provided in Code of Alabama 1975 (as amended), Section 19-3B-303(6).

Paragraph 8(a) supplements and is in addition to the original paragraph 8.

8(a). The petitioner respectfully submits to this Court the following additional reports of its acts and doing as trustee of Aimee's Trust from September 18, 2010 to December 31, 2016, and supplements those shown in the accounting for said period attached to the original petition as Exhibit "B".

The following paragraph is deleted in its entirety from the original petition and the following amendment is substituted in lieu thereof:

9. By way of recapitulation, the petitioner reports a balance on hand in the trust the sum of Sixteen Hundred Ninety Three & 40/100 Dollars ($ 1,693.20) and real property and securities less liabilities having a cost basis of $ 569,161.45 (*includes $1,390.60 of cash shown above) as of December 31, 2016 from which is to be subtracted the cost of this petition, final settlement and such fees and awards to the petitioner and its attorney as may be fixed, determined and allowed by this Court with respect to services and expenses up to the date appointed for this final settlement and relief sought in this petition.

The following are new paragraphs which are an addition to the original petition:

12. The petitioner as a part of the administration of the trust, at the individual co-trustee's requests, secured certain loans from petitioner's bank, BancorpSouth Bank, Birmingham, Alabama on behalf of the trust on the attached Exhibit "X" which at the present time as shown on the above referenced accounting statements constitute a liability of the trust in the amount of $631,194.02 plus accrued interest. The petitioner has been advised by the loan department of BancorpSouth Bank upon learning of the removal of the petitioner as co-trustee, that these loans of the trust should be satisfied in full before the petitioner is finally discharged and the trust property is transferred to the successor corporate co-trustee.

13. This amended petition is filed under Alabama Code Title 19-3B-201,205 & 704 and other related authority of the Alabama Uniform Trust Code Title 19-3B-101.

3

The following are new paragraphs which are an addition to the original petition:

WHEREFORE, the Petitioner prays that this Court will in addition to any such other orders and relief in law or equity so granted including ratification of Samuel S. Parris as the lineal descendant of Aimee:

4. Appoint a day for hearing this final settlement, give such notice of same as is required by law, appoint a guardian ad litem to represent the interest of any contingent minor remainder beneficiaries, examine and audit said report of account, state the same and render a decree passing said account as stated and record same, and fix, determine and allow the Petitioner as trustee of Aimee's Trust and its attorney such fees and awards as may appear fair and just with respect to their services and expenses in the premises;

5. Require the successor corporate co-trustee and the three individual co-trustees secure re-financing of the trust's liabilities shown in paragraph 12 above plus any additional loan proceeds for which the trust needs to meet any other expenses or then current obligations of the trust. The closing of the replacement loan(s) and loan(s) necessary to meet the trust's liquidity requirements through the date(s) of this Court's final orders, shall take place on or before the date any property is transferred by the petitioner to the successor corporate co-trustee.

Petitioner prays for such other, further, or more general relief to which it may be entitled in the premises.

Attorney for Petitioner:                    Petitioner:
                                            BancorpSouth Bank

John R. Martin                              Bryant L. Luquire
Najjar Denaburg, P.C.                       Senior Vice President &
2125 Morris Ave.                            Regional Executive
Birmingham, Alabama 35203
205-250-8465

4

**Ex 28**

<u>VERIFICATION</u>

STATE OF ALABAMA   )
JEFFERSON COUNTY   )

Before me, the undersigned, a notary public in and for said county in said state, personally appeared Bryan L. Luquire, Senior Vice President and Regional Executive of BancorpSouth Bank, who being first duly sworn, makes oath that he has read the foregoing petition and knows the contents thereof, and that he is informed and believes, and upon such information and belief, avers that the facts alleged therein are true and correct and with full authority on behalf of BancorpSouth Bank.

Subscribed   and   sworn   to   before   me   this   14th   day   of
April_____, 2017.

_____
Notary Public
My commission expires: 10/13/20

(SEAL)

5

**Ex 29**

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this ___20TH___ day of ___April___, 2017 served a copy of the foregoing on all known counsel to this proceeding by placing a copy of same in the United States mail, properly addressed and first-class postage prepaid to:


Mark E. Hoffman, Esq.

2011 Fourth Avenue, North
Birmingham, AL 35203


Of Counsel:

John R. Martin

6

Ex 30

EXHIBIT "B"
SCHUTT/HARRISON TRUST
 FBO AIMEE PARRIS & ISSUE
ACCOUNT # 43-0439-01-8
& SUB ACCT. # 43-0439-02-6

Attached Accountings
Sept. 17, 2010 to Dec. 31,2016
1. Sub Cash Account
attached below

2. General Transactions Report
Sept. 17, 2010 to Dec. 31,2016
attached below

Assets and Liabilities 12/31/12016
Book Value

| | |
|---|---:|
| Cash & Eqv. M. Mkt | 1,390.60 |
| Real Estate and Securities | 1,198,964.87 |
| Less Notes and Mortgages | -631,194.02 |
| Net book value of trust | **569,161.45** |
| General Trans Acct. | 1,390.60 |
| Sub Acct. | 302.60 |
| Total Cash & Eqv. In both accounts | **1,693.20** |

|  | Schedule A<br>Receipts<br>Total by Year<br>Sub Acct- #430439026 | Schedule B<br>Disbursements<br>Total by Year | Year-end<br>Money Mkt. Bal. |
|---|---|---|---|
| 2010 | 158,805.68 | 0.00 | 158,805.68 |
| 2011 | 84,353.41 | 138,465.28 | 104,693.81 |
| 2012 | 35.05 | 71,913.10 | 32,815.76 |
| 2013 | 127,553.56 | 79,077.80 | 81,291.52 |
| 2014 | 11,905.41 | 42,894.57 | 50,302.36 |
| 2015 | 3.52 | 46,046.76 | 4,259.12 |
| 2016 | 1.88 | 3,958.40 | 302.60 |
| Grand Total | 382,658.51 | 382,355.91 | 302.60 |

SCHUTT/HARRISON FAMILY TRUST
ACCOUT NO. 430439026

| CASH ACCT | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| Balance Forward | | 158,805.68 | 104,693.81 | 32,815.76 | 81,291.52 | 50,302.36 | 4,259.12 |
| DIVS | | 33.31 | 35.05 | 8.18 | 4.06 | 3.52 | 1.88 |
| CONTRI | 158,805.68 | 84,320.10 | | 127,545.38 | 11,901.35 | | |
| DISB TO BENE | | (138,465.28) | (43,269.10) | (67,598.72) | (42,894.57) | (46,046.76) | (3,958.40) |
| FEES/EXP | | | (28,644.00) | (10,203.63) | | | |
| FEES/EXP | | | | (1,275.45) | | | |
| NET CASH & EQUIVs | 158,805.68 | 104,693.81 | 32,815.76 | 81,291.52 | 50,302.36 | 4,259.12 | 302.60 |

**Ex 33**

| | Schedule A<br>Receipts<br>Total by Year | Schedule B<br>Disbursements<br>Total by Year | Year-end<br>Money Mk Bal.<br>included in<br>Disbursements |
|---|---|---|---|
| | **Main Acct #430439018** | | |
| 2010 | 1,200,185.66 | 1,200,185.66 | 68,447.28 |
| 2011 | 1,087,599.76 | 1,087,599.76 | 3,697.89 |
| 2012 | 1,484,797.52 | 1,484,797.52 | 285.85 |
| 2013 | 342,229.37 | 342,229.37 | 661.8 |
| 2014 | 160,688.92 | 160,688.92 | 1,136.07 |
| 2015 | 186,268.54 | 186,268.54 | 0 |
| 2016 | 90,353.01 | 90,353.01 | 1,390.59 |
| Grand<br>Total | 4,552,122.78 | 4,552,122.78 | 1,390.59 |

## SCHUTT/HARRISON FAMILY TRUST
### ACCOUNT NO. 430439018
### MAIN ACCT

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| Balance Forward | 0.00 | 68,447.28 | 72,145.17 | 72,431.02 | 73,092.80 | 74,228.87 | 74,228.87 |
| DIVS | 622.98 | 1,900.47 | 643.31 | 1,085.28 | 666.18 | 80.52 | 65.87 |
| Other Income | 1,380.00 | 9,399.38 | | 24,449.28 | | | |
| Deposits | 551,137.13 | 426,375.16 | 682,579.61 | 116,604.22 | 11,903.63 | 60,331.11 | 43,536.99 |
| Deposit Adjustment* | | | | (3,381.87) | | | |
| DISB TO BENE | (409,701.66) | (274,036.67) | (618,671.52) | (28,505.05) | (15,333.07) | (8,450.00) | (8,650.26) |
| FEES/EXP | (60,154.56) | (242,874.74) | (89,730.28) | (30,075.78) | (57,225.20) | (62,331.14) | (21,419.60) |
| FEES/EXP | | (28,749.85) | (15,491.94) | (13,844.48) | (14,703.77) | (13,072.72) | (7,059.00) |
| Purchases | (730,329.44) | (541,938.50) | (760,897.53) | (266,413.55) | (73,426.88) | (102,414.68) | (53,224.15) |
| Sales | 647,045.55 | 649,924.75 | 801,574.60 | 224,539.87 | 123,654.92 | 125,856.91 | 46,750.15 |
| Cash | 0.00 | | (6.25) | (14.91) | 14.91 | 0.00 | 0.00 |
| Prior year cash O/D Adjustment | | 0.00 | | 6.25 | | | |
| G/S Financial Sq MMF | 68,447.28 | 3,697.89 | 285.85 | 661.80 | 1,136.07 | 0.00 | 1,390.70 |
| Ending Balance | 68,447.28 | 72,145.17 | 72,431.02 | 73,092.80 | 74,228.87 | 74,228.87 | 75,619.57 |
| NET TO CASH ( ENDING LESS BEGINING) | 68,447.28 | 3,697.89 | 285.85 | 661.78 | 1,136.07 | 0.00 | 1,390.70 |

* see top of page 10 2013 for correct total de
deposits

116,604.22
113,222.35
(3,381.87)

Ex 35

EXHIBIT "B"
SCHUTT/HARRISON TRUST
 FBO AIMEE PARRIS & ISSUE
ACCOUNT # 43-0439-01-8
& SUB ACCT. # 43-0439-02-6

Attached Accountings
Sept. 17, 2010 to Dec. 31,2016
1. Sub Cash Account
attached below

2. General Transactions Report
Sept. 17, 2010 to Dec. 31,2016
attached below

Assets and Liabilities 12/31/12016
Book Value

| | |
|---|---:|
| Cash & Eqv. M. Mkt | 1,390.60 |
| Real Estate and Securities | 1,198,964.87 |
| Less Notes and Mortgages | -631,194.02 |
| Net book value of trust | **569,161.45** |
| General Trans Acct. | 1,390.60 |
| Sub Acct. | 302.60 |
| Total Cash & Eqv. In both accounts | **1,693.20** |

**Ex 36**

|  | Schedule A<br>Receipts<br>Total by Year | Schedule B<br>Disbursements<br>Total by Year | Year-end<br>Money Mkt. Bal. |
|---|---|---|---|
| | **Sub Acct- #430439026** | | |
| 2010 | 158,805.68 | 0.00 | 158,805.68 |
| 2011 | 84,353.41 | 138,465.28 | 104,693.81 |
| 2012 | 35.05 | 71,913.10 | 32,815.76 |
| 2013 | 127,553.56 | 79,077.80 | 81,291.52 |
| 2014 | 11,905.41 | 42,894.57 | 50,302.36 |
| 2015 | 3.52 | 46,046.76 | 4,259.12 |
| 2016 | 1.88 | 3,958.40 | 302.60 |
| Grand<br>Total | 382,658.51 | 382,355.91 | 302.60 |

**Ex 37**

SCHUTT/HARRISON FAMILY TRUST
ACCOUT NO. 430439026

| CASH ACCT | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| Balance Forward | | 158,805.68 | 104,693.81 | 32,815.76 | 81,291.52 | 50,302.36 | 4,259.12 |
| DIVS | | 33.31 | 35.05 | 8.18 | 4.06 | 3.52 | 1.88 |
| CONTRI | 158,805.68 | 84,320.10 | | 127,545.38 | 11,901.35 | | |
| DISB TO BENE | | (138,465.28) | (43,269.10) | (67,598.72) | (42,894.57) | (46,046.76) | |
| FEES/EXP | | | (28,644.00) | (10,203.63) | | | (3,958.40) |
| FEES/EXP | | | | (1,275.45) | | | |
| NET CASH & EQUIVs | 158,805.68 | 104,693.81 | 32,815.76 | 81,291.52 | 50,302.36 | 4,259.12 | 302.60 |

Ex 38

|  | Schedule A<br>Receipts<br>Total by Year | Schedule B<br>Disbursements<br>Total by Year | Year-end<br>Money Mk Bal.<br>included in<br>Disbursements |
|---|---|---|---|
| **Main Acct #430439018** | | | |
| 2010 | 1,200,185.66 | 1,200,185.66 | 68,447.28 |
| 2011 | 1,087,599.76 | 1,087,599.76 | 3,697.89 |
| 2012 | 1,484,797.52 | 1,484,797.52 | 285.85 |
| 2013 | 342,229.37 | 342,229.37 | 661.8 |
| 2014 | 160,688.92 | 160,688.92 | 1,136.07 |
| 2015 | 186,268.54 | 186,268.54 | 0 |
| 2016 | 90,353.01 | 90,353.01 | 1,390.59 |
| Grand<br>Total | 4,552,122.78 | 4,552,122.78 | 1,390.59 |

SCHUTT/HARRISON FAMILY TRUST
ACCOUT NO. 430439018

| MAIN ACCT | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| Balance Forward | 0.00 | 68,447.28 | 72,145.17 | 72,431.02 | 73,092.80 | 74,228.87 | 74,228.87 |
| DIVS | 622.98 | 1,900.47 | 643.31 | 1,085.28 | 666.18 | 80.52 | 65.87 |
| Other Income | 1,380.0C | 9,399.38 | | 24,449.28 | | | |
| Deposits | 551,137.13 | 426,375.16 | 682,579.61 | 116,604.22 | 11,903.63 | 60,331.11 | 43,536.99 |
| Deposit Adjustment* | | | | (3,381.87) | | | |
| DISB TO BENE | (409,701.66) | (274,036.67) | (618,671.52) | (28,505.05) | (15,333.07) | (8,450.00) | (8,650.26) |
| FEES/EXP | (60,154.56) | (242,874.74) | (89,730.28) | (28,075.78) | (57,225.20) | (62,331.14) | (21,419.60) |
| FEES/EXP | | (28,749.85) | (15,491.94) | (13,844.48) | (14,703.77) | (13,072.72) | (7,059.00) |
| Purchases | (730,329.44) | (541,938.50) | (760,897.53) | (266,413.55) | (73,426.88) | (102,414.68) | (53,224.15) |
| Sales | 647,045.55 | 649,924.75 | 801,574.60 | 224,539.87 | 123,654.92 | 125,856.91 | 46,750.15 |
| Cash | 0.00 | 0.00 | (6.25) | (14.91) | 14.91 | 0.00 | 0.00 |
| Prior year cash O/D Adjustment | | | | 6.25 | | | |
| G/S Financial Sq MMF | 68,447.28 | 3,697.89 | 285.85 | 661.80 | 1,136.07 | 0.00 | 1,390.70 |
| Ending Balance | 68,447.28 | 72,145.17 | 72,431.02 | 73,092.80 | 74,228.87 | 74,228.87 | 75,619.57 |
| NET TO CASH ( ENDING LESS BEGINING) | 68,447.28 | 3,697.89 | 285.85 | 661.78 | 1,136.07 | 0.00 | 1,390.70 |

116,604.22
113,222.35
(3,381.87)

*see top of page 10 2013 for correct total de deposits

Ex 40

EXHIBIT "X"

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANC<br>2211 HIGHLAND AVE<br>BIRMINGHAM AL 35205 | BANCORPSOUTH BANK<br>P.O. BOX 55338<br>BIRMINGHAM, AL 35255-5338 |

Type: ☐ individual ☐ partnership ☐ corporation ☒ Trust _____
State of organization/registration (if applicable) _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is  DECEMBER 07, 2012 .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☐ Debtor ☒  SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE  (Borrower) owes to Secured Party:

☐ Specific Debts. The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ All Debts. All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☒ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

306 ACRES TIMBERLAND
MONROE COUNTY AL
SEE ATTACHED EXHIBIT 'A'
MONROEVILLE AL

This financing statement covers the above collateral, whether now owned or hereafter acquired, together with all supporting obligations, proceeds, products, fixtures, accessions, accessions and substitutions, including, but not limited to, the items listed above.
The Inclusion of proceeds does not authorize Debtor to sell or transfer above described property.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☒ agricultural ☐ _____ purposes.

---

SIGNATURES. Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH S | BANCORPSOUTH BANK |
| By: *Roger Smith* | By: _____ |
| BANCORPSOUTH BANK, CORPORATE TRUSTEE | |

©1996, 2006 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001 *(page 1 of 2)*



GENERAL PROVISIONS. Each ... or's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

APPLICABLE LAW. This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

NAME AND LOCATION. Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

WARRANTIES AND REPRESENTATIONS. Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party. Debtor will keep the Property and Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

DUTIES TOWARD PROPERTY. Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments. If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

PERFECTION OF SECURITY INTEREST. Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

INSURANCE. Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

AUTHORITY TO PERFORM. If Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement. If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

PURCHASE MONEY SECURITY INTEREST. If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

DEFAULT. Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

REMEDIES. After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate the Property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not taking a remedy.

WAIVER. Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

NOTICE AND ADDITIONAL DOCUMENTS. Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications that Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

© 2000 Bankers Systems, Inc., St. Cloud, MN  Form SA-BUS  7/24/2001

(page 2 of 2)

Ex 42



BP0298536

RMC Bk 0298 Pg 536 : pg 1 *

**\*\*MORTGAGE DRAWN-TITLE NOT EXAMINED BY BROWN & VARNADO LLC\*\***

STATE OF SOUTH CAROLINA )
                               )         MORTGAGE OF REAL ESTATE
COUNTY OF CHARLESTON )

WHEREAS, We, BANCORPSOUTH BANK, JAMES L. PARRIS, G.D. VARN, III and JAMES V. SEASE, JR., CO-TRUSTEES OF THE SCHUTT/HARRISON TRUST FBO AIMEE PARRIS TRUST DATED 9/16/1971 (hereinafter also styled the Mortgagor), in and by our certain note or obligation bearing even date herewith, stand firmly held and bound unto BANCORPSOUTH BANK, (hereinafter also styled the Mortgagee), whose mailing address is ___2211 Highland Ave, Birmingham, AL 35205_____, in the principal sum of SIX HUNDRED ONE THOUSAND NINE HUNDRED TEN DOLLARS AND FIFTY-TWO CENTS_____ ($_601,910.52___) Dollars, said note providing for a final maturity date of December 7, 2013_, as in and by the note and conditions thereof, reference thereunto had, will more fully appear.

NOW, KNOW ALL MEN, that We, the Mortgagors, in consideration of the debt evidenced by the note, and for the better securing the payment thereof, according to the conditions of the note; which with all its provisions is hereby made a part hereof; and also in consideration of Three Dollars to the Mortgagors in hand paid truly paid by the Mortgagees, at and before these Presents, the receipt and sufficiency of which is hereby acknowledged, have granted, bargained, sold and released, and by these Presents do grant, bargain, sell and release unto the Mortgagees, their heirs and assigns forever, the following described real property, to wit:

(SEE ATTACHED EXHIBIT FOR LEGAL DESCRIPTION)

TOGETHER with all and singular the rights, members, hereditaments and appurtenances to the said Premises belonging, or in anywise incident or appertaining.

TO HAVE AND TO HOLD, all and singular the said Premises unto the Mortgagees, their heirs and assigns forever.

AND We do hereby bind ourselves and our heirs, executors and administrators, to procure or execute any further necessary assurances of title to the said Premises, the title to which is unencumbered, and also to warrant and forever defend all and singular the said Premises unto the Mortgagees, their heirs and assigns, from and against us and our heirs, executors and administrators and all persons lawfully claiming, or to claim the same or any part thereof.

AND IT IS AGREED, by and between the parties hereto, that the Mortgagors, and Mortgagors' heirs, executors or administrators, shall keep all the buildings erected, or to be erected on said Premises, insured against loss or damage by fire or other casualty, including



003850007905716UC03MORTGAGE

flood if the said Premises may now or hereafter be situated in a F.E.M.A. special flood hazard zone, for the benefit of the Mortgagees, for an amount not less than the appraised value of the improvements thereon, in such company as shall be approved by the Mortgagees, and shall deliver the policy to the Mortgagees, and in default thereof, the Mortgagees, and Mortgagees' heirs and assigns, may effect such insurance and reimburse themselves under this mortgage for the expense thereof, with interest thereon, from the date of its payment. And it is further agreed, in the event of other insurance and contribution between the insurers, that the Mortgagees, and Mortgagees' heirs or assigns shall be entitled to receive from the aggregate of the insurance moneys to be paid, a sum equal to the amount of the debt secured by this mortgage.

AND IT IS FURTHER AGREED, by and between the parties, that if the Mortgagors, or Mortgagors' heirs, executors, administrators or assigns, shall fail to pay all taxes and assessments upon the said Premises when the same shall first become payable, then the Mortgagees, or Mortgagees' heirs or assigns, may cause the same to be paid, together with all penalties and costs incurred thereon, and reimburse themselves under this mortgage for the sums so paid, with interest thereon, from the dates of such payments.

AND IT IS FURTHER AGREED, by and between the parties, that upon any default being made in the payment of the principal and interest on the note, or of the insurance premiums, or of the taxes, of the assessments herein above mentioned, when the same shall severally first become payable, or in any other of the provisions of this mortgage, that then the entire amount of the debt secured, or intended to be secured hereby, shall forthwith become due, at the option of the Mortgagees, their heirs or assigns, although the period for the payment of the debt may not then have expired.

AND IT IS FURTHER AGREED, that if the holder of the note secured hereby is compelled to pay any taxes upon the debt represented by the note, or by this mortgage, then, and in that event, unless the taxes are paid by some party other than the holder, that the entire amount of the debt secured, or intended to be secured, shall forthwith become due at the option of the Mortgagees, their heirs or assigns, although the period for its payment may not then have expired.

AND IT IS FURTHER AGREED, by and between the parties, that, should legal proceedings be instituted for the collection of the debt secured hereby, then and in that event, the Mortgagees, or Mortgagees' heirs or assigns, shall have the right to have a Receiver appointed of the rents and profits of the above described premises, with power to forthwith lease out the said Premises anew if he should so elect, who, after deducting all charges and expenses attending such proceedings, and the execution of the trust as Receiver, shall apply the residue of the rents and profits towards the payment of the debts secured hereby.

AND IT IS FURTHER AGREED, if all or any part of the Premises or any interest therein is sold or transferred without Mortgagees' prior written consent, Mortgagees may, at Mortgagees' sole option, demand full payment of all sums secured by this mortgage. If Mortgagees exercise this option, Mortgagees shall give Mortgagors notice of acceleration. The notice shall provide for a period of not less than 30 days from the date the notice is delivered or

–2–

mailed to Mortgagors within which Mortgagors must pay all sums secured by this mortgage.  If Mortgagors fail to pay such sums prior to the expiration of this period, Mortgagees may invoke any remedies permitted hereunder without further notice or demand to Mortgagors.

AND IT IS FURTHER AGREED, that Mortgagors represent and warrant to Mortgagees that the said Premises are free from the presence of asbestos, PCB's, chemicals, toxins, petroleum products or other hazards or toxic substances or waste.  Mortgagors shall not permit hazardous or toxic substances or wastes to be permanently stored on or disposed at the said Premises or conduct or allow any activity on the said Premises which, in the opinion of the Mortgagees, may give rise to liability to anyone under the Laws (hereafter defined), without the prior written consent of Mortgagees.  Without limiting the generality of the other provisions of this mortgage, Mortgagors, at Mortgagors' sole cost and expense, shall comply with all Federal, State and Local laws, rules, regulations and orders (the "Laws") with respect to the presence, discharge or removal of hazardous or toxic substances or waste on the said Premises and all other environmental laws effecting the said Premises, pay immediately when due the cost removal of any such substances or waste, and keep the said Premises free of any lien imposed pursuant to the Laws.  In the event Mortgagors fail to comply with any requirements of the Laws, Mortgagees may, but without the obligation to do so, cause the removal or remedy of the presence of the hazardous substances or waste and any amounts paid as a result thereof, together with the interest at the note rate from the date of payment by Mortgagees until paid in full, shall be immediately due and payable by Mortgagors to Mortgagees and shall be secured by this mortgage.  Mortgagors agree to indemnify Mortgagees and hold Mortgagees harmless from and against all loss, liability, damage and expense, including without limitation attorney's fees and costs incurred by Mortgagees, whether as holder of this mortgage, as mortgagees in possession or as successor in interest to Mortgagors as owner of the said Premises by virtue of foreclosure or acceptance of a deed in lieu of foreclosure, as a result of, or in connection with the assertion of any claim or lien against Mortgagees or the said Premises relating to, the presence or removal of any hazardous substance or waste or the compliance or non-compliance with any laws relating thereto or to any other environmental matters effecting the said Premises, including any loss in value of the said Premises as a result thereof, including without limitation claims relating to personal injury or damage to personal property.

AND IT IS FURTHER AGREED, by and between the parties, that should legal proceedings be instituted for the foreclosure of this Mortgage, or for any purpose involving this Mortgage, or should the debt hereby secured be placed in the hands of an attorney at law for collection, by suit or otherwise, that all costs and expenses incurred by the Mortgagees, or Mortgagees' heirs or assigns, including a reasonable sum for attorney's fees, shall thereupon become due and payable as a part of the debt secured hereby, and may be recovered and collected hereunder.

PROVIDED, ALWAYS, and it is the true intent and meaning of the parties to these Presents, that when the Mortgagors or Mortgagors' heirs, executors or administrators shall pay, or cause to be paid unto the Mortgagees, or Mortgagees' heirs or assigns, the debt, with the interest thereon, if any shall be due, and also sums of money paid by the Mortgagees, or Mortgagees' heirs or assigns, according to the conditions and agreements of the note, and of this

-3-

mortgage and shall perform all the obligations according to the true intent and meaning of the Note and Mortgage, and the conditions thereunder written, then this Deed of Bargain and Sale shall cease, determine to be void, otherwise it shall remain in full force and virtue.

AND IT IS LASTLY AGREED, by and between the parties, that the Mortgagors are to hold and enjoy the said Premises unless default under the note or this mortgage be made.

IN WITNESS WHEREOF, the Mortgagors have hereunto set Mortgagors' hands and seals this ___7___ day of December, 2012.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

BANCORPSOUTH BANK, JAMES L. PARRIS, G.D. VARN, III and JAMES V. SEASE, JR., CO-TRUSTEES OF THE SCHUTT/HARRISON TRUST FBO AIMEE PARRIS TRUST DATED 9/16/1971

By: Bancorpsouth Bank as Authorized
    Co-Trustee

By: _____
Its:

STATE OF ALABAMA          )
COUNTY OF Jefferson       )          ACKNOWLEDGMENT
                          )

I, the undersigned Notary for the State of Alabama, do hereby certify that the above named Mortgagor personally appeared before me this __7th__ day of ~~November~~ 2012, and December acknowledged the due execution of the foregoing instrument.

_____ (SEAL)
NOTARY PUBLIC FOR ALABAMA
My Commission Expires:

—4—

MISTY POE
NOTARY PUBLIC
ALABAMA STATE AT LARGE
MY COMMISSION EXPIRES OCTOBER 11, 2018

RMC Bk 0298 Pg 536 : pg 4

Ex 46

RMC BK 0298 Pg 536 : pg 5 *

EXHIBIT A

**ALL** that certain piece, parcel or lot of land, situate, lying and being in the Town of Mt. Pleasant, Charleston County, S.C., and being known and designated as "Lot 30", containing 10,271 sq. ft., 0.24 acres, more or less, on that certain plat of ARC Surveying Company, Inc., dated October 22, 2001, revised November 1, 2001, entitled "BRAEMORE FINAL SUBDIVISION PLAT, TOWN OF MT. PLEASANT, CHARLESTON COUNTY, SC" said plat being recorded in the RMC Office for Charleston County in Plat Book EF, page 513, said lot having such size, shape, dimensions, buttings and boundings, more or less as are shown on said plat, which is specifically incorporated herein by reference and made a part hereof.

SAID property is subject to any and all applicable easements and covenants of record and to all applicable governmental statutes, ordinances, rules and regulations.

**BEING** the same property conveyed to Mortgagors herein by deed of Jan V. Hipp And Jan V. Hipp As Personal Representative Of The Estate Of Charles R. Hipp, Jr. dated September 6, 2012 and recorded September 14, 2012 in the RMC Office for Charleston County in Book 0277 at Page 747.

Tax Map # 514-12-00-178

BancorpSouth Bank as Authorized
Co-Trustee
By: Rozn Smith
ITS: V P & Sr.PERSONAL TRUST OFFICER

-5-

Ex 47

RMC Bk 0298 Pg 536 - pg 6 *

# RECORDER'S PAGE

*NOTE:* This page MUST remain
with the original document



Filed By:

| |
|---|
| BROWN & VARNADO LLC |
| PO BOX 1127 |
| |
| MOUNT PLEASANT SC 29465 (BOX) |

## RECORDED

| | |
|---|---|
| Date: | December 19, 2012 |
| Time: | 12:29:19 PM |

| Book | Page | DocType |
|---|---|---|
| 0298 | 536 | Mtg |

Charlie Lybrand, Register
Charleston County, SC

Maker:

| |
|---|
| BANCORPSOUTH BK TR ETAL |

Recipient:

| |
|---|
| BANCORPSOUTH BK |

Original Book:

| |
|---|
| |

Original Page:

| |
|---|
| |

# of Sats: | | Note: | |

| | # of Pages: | 6 |
|---|---|---|
| | # of Refs: | |

| | | |
|---|---|---|
| Recording Fee | $ | 10.00 |
| Extra Reference Cost | $ | . |
| Extra Pages | $ | 1.00 |
| Postage | $ | . |
| Chattel | $ | . |
| TOTAL | $ | 11.00 |

| Drawer | Drawer 4 |
|---|---|
| Clerk | LRR |

C-0 001 fb01 043013 00186



0298
Book



536
Page



12/19/2012
Recorded Date



6
# Pgs

Original Book

Original Page



M
Doc Type



12:29:19
Recorded Time

843-958-4800    101 MEETING STREET    CHARLESTON, SC 29401    www.charlestoncounty.org

Ex 48

P.O. Box 1605
Jackson, MS 39215-1605



0009423    SP       3325      -C04-P00000-I
AIMEE PARRIS
C/O JAMES L. PARRIS
1020 EWALL STREET
MT. PLEASANT SC 29464-3046

3325-04-00-0009423-0001-0059308

**Ex 49**

3325-04-00-0009423-0001-0059308

——————— State of Alabama ———————————————Space Above This Line For Recording Data———————

This instrument was prepared by (name, address): CINDY MITCHELL
PO BOX 4360 TUPELO, MS 38803-4360

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ___12/07/2012_____ and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR:  SCHUTT&HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE
   2211 HIGHLAND AVE
   BIRMINGHAM JEFFERSON COUNTY AL 352050000

   [ ]  If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

   LENDER:   BANCORPSOUTH BANK
   PO BOX 4360
   TUPELO, MS 38803-4360

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:
   See Exhibit A annexed hereto and made a part hereof as if copied herein verbatim.

   The property is located in ___MONROE COUNTY_____ at _____
   _____ (County) _____
   _____ MONROEVILLE _____, Alabama ___0___
   _____(Address)_____(City)_____(Zip Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). This Security Instrument will remain in effect until the Secured Debt and all underlying agreements have been terminated in writing by Lender.

ALABAMA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)     (page 1 of 8)
ExperEl ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-AL  1/30/2003
00365000790571BUCCGMORTGAGE

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ _____ 889,817.72 _____ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
   A loan dated 12/67/2012 in the principal amount of $889,817.72 that matures on 12/67/2013
   Given by SCHUTT/HARRISON FAMILY TRUST FBO AIMEE

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, sell, convey and mortgage with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Mortgagor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

*(page 2 of 8)*

Exßery © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-AL 1/2/2003

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:

   A. Mortgagor is duly organized and validly existing in Mortgagor's state of incorporation or organization. Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.

   B. The execution, delivery and performance of this Security Instrument by Mortgagor and the obligations evidenced by the Secured Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.

   C. Other than previously disclosed in writing to Lender, Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor absolutely, unconditionally, irrevocably and immediately assigns, grants, bargains, conveys and mortgages to Lender all the right, title and interest in the following (Property):.

   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Lender grants Mortgagor a revocable license to collect, receive, enjoy and use the Rents as long as Mortgagor is not in default. Mortgagor's default automatically and immediately revokes this license. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Mortgagor agrees that Lender will not be considered to be a mortgagee-in-possession by executing this Security Instrument or by collecting or receiving payments on the Secured Debts, but only may become a mortgagee-in-possession after Mortgagor's license to collect, receive, enjoy and use the Rents is revoked by Lender or automatically revoked on Mortgagor's default, and Lender takes actual possession of the Property. Consequently, until Lender takes actual possession of the Property, Lender is not obligated to perform or discharge any obligation of

*(page 3 of 8)*

*Expere§* ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-AL 10/2005

Mortgagor under the Leases, appear in or defend any action or proceeding relating to the Rents, the Leases or the Property, or be liable in any way for any injury or damage to any person or property sustained in or about the Property. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. This Assignment is enforceable when Lender takes an affirmative action as prescribed by the law of the state where the Property is located. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **LEASEHOLDS; CONDOMINIUMS; TIME-SHARES; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, time-share or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development. In addition, except with the written approval of Lender, Mortgagor will not partition or subdivide the Property; abandon or terminate the condominium, time-share or planned unit development project; terminate professional management; or amend any provision of the covenants, bylaws or regulations of the condominium, time-share or planned unit development if the provision benefits Lender.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:
    A. Any party obligated on the Secured Debt fails to make payment when due;
    B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any other person or entity obligated on the Secured Debt;
    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
    F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, including without limitation, the power to sell the Property, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

If Lender initiates a judicial foreclosure, Lender shall give the notices as required by applicable law. If Lender invokes the power of sale, Lender shall publish the notice of sale, and arrange to sell all or part of the Property, as required by applicable law. Lender or its designee may purchase the Property at any sale. Lender shall apply the proceeds of the sale in the manner required by applicable law. The sale of any part of the Property shall only operate as a foreclosure of the sold Property, so any remaining Property shall continue to secure any unsatisfied Secured Debt and Lender may further foreclose under the power of sale or by judicial foreclosure.

If Lender invokes the power of sale, Lender will place in the United States mail a copy of the notice of sale to Mortgagor that Lender will cause to be published once a week for three consecutive weeks in a newspaper published in the county where the Property is located. Then, Lender will sell the Property to the highest bidder at public auction at the front door of the courthouse in the county where the Property is located. Lender will deliver to the purchaser Lender's deed conveying the Property. Lender may opt to sell the Property in parcels or as a whole. Lender or its designee may

*(page 4 of 6)*

Exper̄it̄ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI AL 1/3/2003

purchase the Property at any sale. Mortgagor covenants and agrees that the proceeds of the sale will be applied in the following order: (a) to the expense of advertising, selling and conveying, including a reasonable attorney's fee; (b) the payment of any amounts that may have been expended, or that may then be necessary to expend, in paying insurance, taxes, or other encumbrances, with interest thereon; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it.

18. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

19. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.
   D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
   E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
   F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
   G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
   H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.
   I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.
   J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.
   K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.
   L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

Experts© ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-AL 1/3/2003                                                                                             (page 5 of 8)

20. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

   A. Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

   All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

   Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt existing immediately before the acquisition.

   B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

   C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

27. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement rights relating to the Property.

*(page 5 of 8)*

ExŜerş̂ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RE(IL-A)  1/3/2003

**28. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until the Secured Debt is paid in full and all underlying agreements have been terminated in writing by Lender.

☐ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ Additional Terms.

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH BANK AS CORPORATE TRUSTEE

_____ (Seal)          _____ (Seal)
(Signature) BANCORPSOUTH BANK,CORPORATE TRUSTEE    (Date)    (Signature)                                  (Date)

_____ (Seal)          _____ (Seal)
(Signature)                                  (Date)    (Signature)                                  (Date)

_____                  _____
(Witness as to all Signatures)                   (Witness as to all Signatures)

Exper̄ṭ̄ ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-AL  1/3/2003                    (page 7 of 8)

ACKNOWLEDGMENT:

STATE OF _____, COUNTY OF _____ } ss.

*Individual*

I, a notary public, hereby certify that _RIGER SMITH_ _____ whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date. Given under my hand this _____7TH_____ day of _DECEMBER_, _2012_ .

My commission expires: _____

_____
                              (Notary Public)

STATE OF _Alabama_____, COUNTY OF _Jefferson_____ } ss.

*Business or Entity Acknowledgment*

I, a notary public, in and for said County in said State, hereby certify that _ROGER SMITH_ _____ whose name(s) as _BANCORPSOUTH BANK_ _____ Title(s) _CORPORATE TRUSTEE_ _____ Title(s) of the _SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE_ (Name of Business or Entity) a _Trust_ _____ (Describe the Type of Entity) is/are signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they, in such capacity and with full authority, executed the same voluntarily for and as the act of said entity. Given under my hand this the _____7th_____ day of _December, 2012_ .

My commission expires: _____

_Cynthia K Mitchell_____
                              (Notary Public)

**CYNTHIA KAY MITCHELL**
Notary Public
Alabama State At Large
My Commission Expires 8-11-2015

© 1996, 2001 Bankers Systems, Inc., St. Cloud, MN   Form AGCO-RESI-AL 1/3/2003

(page 8 of 8)

Security Agreement Addendum

| Lender | Borrower | |
|---|---|---|
| BANCORPSOUTH BANK P.O. BOX 55338 BIRMINGHAM, AL 36255-5338 | SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE 2211 HIGHLAND AVE BIRMINGHAM, AL 36205 | Loan Number ___365900790571___ Loan Date ___12/07/2012___ Maturity Date ___12/07/2013___ Loan Amount ___$604,817.72___ |

This Security Agreement Addendum is made a part of the note evidencing the above referenced loan.

**Security**

305 ACRES TIMBERLAND
MONROE COUNTY AL
SEE ATTACHED EXHIBIT 'A'
MONROEVILLE AL

1ST TD HOUSE AND LOT
LOCATED AT:
337 N CIVITAS ST
MT PLEASANT , CHARLESTON COUNTY , SC 29464

1ST MTG
LOCATED AT:

MONROEVILLE , MONROE COUNTY COUNTY , AL

**Signatures**

I agree that the above described property shall be security for the above-reference loan to the same extent as if the property were fully set forth in the note. I also acknowledge receipt of a copy of this Security Agreement Addendum on the date set forth above as the Loan Date.

X _____ (Seal)
SCHUTT/HARRISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH & BY BANCORPSOUTH BANK, CORPORATE TRUSTEE

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

X _____ (Seal)

coladdno.pg1



| | | |
|---|---|---|
| SCHUTTAKARISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE 2211 HIGHLAND AVE BIRMINGHAM, AL 35205 | BANCORPSOUTH BANK P.O. BOX 55338 BIRMINGHAM, AL 35255-5338 | Loan Number __385000790571__ Date __12/07/2012__ Maturity Date __12/07/2013__ Loan Amount $ __4604,817.72__ Renewal Of __000036500079x767__ |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __SIX HUNDRED FOUR THOUSAND__ __EIGHT HUNDRED SEVENTEEN DOLLARS AND 72 CENTS__ Dollars $ __604,817.72__

☒ Single Advance: I will receive all of this principal sum on __12/07/2012__. No additional advances are contemplated under this note.

☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ ____$0.00____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from __12/07/2012__ at the rate of __4.750__ % per year until __12/07/2012__

☒ Variable Rate: This rate may change as stated below.

☒ Index Rate: The future rate will be __0.750% ABOVE__ the following index rate: _____ __BancorpSouth Prime__

☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ Frequency and Timing: The rate on this note may change as often as __every day__
A change in the interest rate will take effect __daily__

☒ Limitations: During the term of this loan, the applicable annual interest rate will not be more than __N/A__ % or less than __4.750__ %. The rate may not change more than __N/A__ % each __N/A__

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change. ☒ The amount of the final payment will change.
☐ _____

ACCRUAL METHOD: Interest will be calculated on a __actual/360 day__ basis.

POST MATURITY RATE: I agree to pay interest on the unpaid principal balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☐ LATE CHARGE: If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

☒ ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: ORIGINATION $400.00   FLOOD DET. FEE $10.00   TITLE INS.-LL $729.00   REC. FEE-STATE $22.00   MTG.TAX $726.00   REC. FEE-COUNTY $18.00   TITLE INS.-LL $609.00

PAYMENTS: I agree to pay this note as follows:

☒ Interest: I agree to pay accrued interest __in installments__
__Monthly Payments first due on 1/07/2013__

☒ Principal: I agree to pay the principal __on DECEMBER 07, 2013__

☐ Installments: I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

ADDITIONAL TERMS:   SECURITY:
REFER TO ATTACHED SECURITY AGREEMENT ADDENDUM.

---

☒ SECURITY: This note is separately secured by (describe separate document by type and date): __SEC AGRMT DATED 12/07/2012__ __MTG DATED 12/07/2012__
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

PURPOSE: The purpose of this loan is __Residential Rental Property__ __Refinance/Purchase__

SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

_Roger Smith_

SCHUTTAKARISON FAMILY TRUST FBO AIMEE PARRIS BANCORPSOUTH SUCCESSOR TRUSTEE BY BANCORPSOUTH BANK, CORPORATE TRUSTEE

DISPOSITION OF FUNDS

| Deposited to Account Number | Check Number |
|---|---|
| Signature for Lender | Officer # 23900 |

---

UNIVERSAL NOTE
ExperEz © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-A, 3/4/2002   (page 1 of 2)
OFS v 4.3 KQ(12012  A000795415
0036500079057190CC10WWNOT

Ex 60

DEFINITIONS: As used on page 1, "X" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

APPLICABLE LAW: The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

COMMISSIONS OR OTHER REMUNERATION: I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

PAYMENTS: Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

INTEREST: Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

INDEX RATE: The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

ACCRUAL METHOD: The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

POST MATURITY RATE: For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

SINGLE ADVANCE LOANS: If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

MULTIPLE ADVANCE LOANS: If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

PAYMENTS BY LENDER: If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

SET-OFF: I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

REAL ESTATE OR RESIDENCE SECURITY: If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

DEFAULT: I will be in default if any one or more of the following occur:
(1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or address without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

REMEDIES: If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

WAIVER: I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

OBLIGATIONS INDEPENDENT: I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without releasing my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

FINANCIAL INFORMATION: I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

NOTICE: Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

(page 2 of 2)

## RESOLUTIONS AUTHORIZING INDEBTEDNESS AND SECURITY

TO:   BancorpSouth Bank ("Lender")

Name and Address of Borrower (the "Organization"):

SCHUTT/HARRISON FAMILY TRUST FBO AIMEE  Federal Tax I.D. Number: __38-6895603__
2211 HIGHLAND AVE.                      Date: _____06/26/12_____
BIRMINGHAM AL 35205-0000               State Where Organized: __AL__
_____
_____

| Type of Organization: | | Governing Body: | |
|---|---|---|---|
| ____ | Sole Proprietorship | ____ | Owner |
| ____ | Corporation | ____ | Board of Directors |
| ____ | Partnership | ____ | General Partners |
| ____ | Limited Partnership | ____ | General and Silent Partners |
| ____ | Limited Liability Company | ____ | Members and/or Managers |
| _X_ | Other: TRUST | TRUSTEE | |
| | (For example, Trust, Unincorporated Religious Society, Unincorporated Association) | | |

I/we hereby certify that the following resolutions were unanimously adopted, approved, and confirmed by the Organization at a meeting of the Governing Body held on the date set forth above, which was duly noticed and attended by a quorum of such persons, or conducted pursuant to a waiver of notice and unanimous consent to action in lieu thereof:

**RESOLVED**, that any ONE   ( 1 ) of the following persons and the respective successors in office of any of them, is hereby authorized to act as, an Authorized Representative, of the Organization for any and all of the purposes hereafter stated:

| Name | Title | Specimen Signature |
|---|---|---|
| BANCORPSOUTH BANK | CORPORATE TRUSTEE | *[signature]* |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Any ONE   ( 1 ) Authorized Representative(s) is now and hereafter authorized for and in the name of the Organization, from time to time, (a) to obtain from Lender for the Organization such loans, credits, advances, borrowings and financial accommodations of any kind and character as in the judgment of such Authorized Person may be advisable and appropriate; (b) to execute and deliver notes, loan agreements, leases, and other documents or instruments evidencing or contracting for indebtedness to the Lender (including without limitations, any and all renewals, extensions, modifications, refinancings and amendments of the same) and to convey, assign, transfer, pledge, mortgage, grant security interests in, or otherwise encumber by such agreements, documents and instruments as the Lender may require, any and all property of the Organization, whether real or personal and whether tangible or intangible, which the Lender may require to secure the payment thereof; (c) to discount with, assign or sell to the Lender, conditional sales contracts, notes, acceptances, drafts, receivables, leases and other indebtedness payable to the Organization, upon such terms as the Lender may require and to endorse in the name of the Organization all agreements, items, documents or instruments relating to the same and to guarantee payment thereof to the Lender; (d) to guarantee to the Lender the payment of any indebtedness of any third party owed or to be owed to the Lender, and to convey, assign, transfer, pledge, mortgage, grant security interests in, or otherwise encumber by such agreements, documents and instruments as the Lender may require, any and all property of the Organization, whether real or personal and whether tangible or intangible, which the Lender may require to secure the payment thereof; (e) to hypothecate, convey, assign, transfer, pledge, mortgage, grant security interests in, or otherwise encumber by such agreements, documents and instruments as the Lender may require, any and all property of the Organization, whether real or personal and whether tangible or intangible, which the Lender may require to secure the payment of any indebtedness owed or to be owed by any third party to the Lender; and (f) to perform all such acts, do all such things and execute and deliver all such agreements, documents and instruments as any Authorized Person deems necessary or advisable to carry out the purposes of these resolutions:

D000038689680D0UC01RG6RES
0FS v 4.3 10/1/2012  A00C705415
resolution.ppl 3/4/2003   30ZX0XY0321

Ex 62

**FURTHER RESOLVED,** that any ONE   (1 ) Authorized Representatives is now and hereafter authorized for and in the name of the Organization from time to time, to request and receive draws and advances in connection with any indebtedness of the Organization to the Lender pursuant to these resolutions;

**FURTHER RESOLVED,** that nothing in these resolutions shall be construed to preclude the Organization from being bound by the acts of any person other than Authorized Person if the Organization would be bound by such acts absent these resolutions;

**FURTHER RESOLVED,** that any and all acts and things done pursuant to these resolutions, or performed substantially consistently with but prior to the adoption of these resolutions, are hereby ratified and approved;

**FURTHER RESOLVED,** that any officer of the Organization or any member of the Governing Body is authorized to certify these resolutions, which supersede all resolutions of like tenor previously furnished to the Lender, and to provide written notice to the Lender (which notice may be in the form of new resolutions certified by any officer of the Organization or any member of the Governing Body) in the event these resolutions are hereafter modified or rescinded; and

**FURTHER RESOLVED,** that these resolutions will continue in full force and effect and shall remain irrevocable as far as the Lender is concerned until the Lender is so notified in writing of their modification or rescission, which shall have prospective effect only.

I/we further certify that I am a person authorized to make the certifications herein and that the foregoing is a complete and correct copy of the resolutions duly adopted by the Organization and affirmatively appearing in the permanent records of the Organization.

I/we further certify that there is no provision within the articles or incorporation, the by-laws, the articles of organization, the operating agreement, the partnership agreement, the statement of partnership, or other governing documents of the Organization, whichever of the foregoing instruments is or are applicable, that either restricts the passing of the foregoing resolutions or prevents me from executing this certification, and that these resolutions were and are duly approved and authorized in conformity with the Organization's governing documents and applicable law.

I/we further certify that the foregoing resolutions (i) have not been modified, amended or rescinded, (ii) are in full force and effect, and (iii) are binding upon the Organization.

I/we further certify that the Organization is duly organized, validly existing and in good standing under the laws governing its creation and existence, that the Organization's state of organization set forth above is correct, and that the Organization is duly registered or qualified in all states in which such is required.

For Others:

In witness whereof, I/we have subscribed my/our name(s) to this document on
12/7/2012           (date).

| | |
|---|---|
| _Signature_ | VP & Sr Trust Officer _Title_ |
| _Signature_ | _Title_ |

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust  )
  Dated September 16, 1971 for the benefit        )
of the issue of Sarah Schutt Harrison,            )        Case No. 196712
Specifically: Trust for the benefit of            )
  Aimee Harrison Hutson                           )
(now known as Aimee Harrison Parris)              )

NOTICE OF HEARING

To:

Britten L. Steiner
Phelps Dunbar, LLP
101 Dauphin St., Ste. 1000
Mobile, AL 36652


Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this $\mathscr{G}$ day of May, 2017.


John R. Martin, Attorney

Ex 64

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust )
Dated September 16, 1971 for the benefit )
of the issue of Sarah Schutt Harrison, ) Case No. 196712
Specifically: Trust for the benefit of )
Aimee Harrison Hutson )
(now known as Aimee Harrison Parris) )

NOTICE OF HEARING

To: _____

Oakworth Capital Bank
As Trustee of the Renee D. Harrison Trust,
Scott P. Harrison Trust and Phyllis H. Ballentine Trust
One Saint Louis Street, Suite 3200
Mobile, AL 36602

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this ___7___ day of May, 2017.

_____
John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust    )
 Dated September 16, 1971 for the benefit         )
of the issue of Sarah Schutt Harrison,           )     Case No. 196712
Specifically: Trust for the benefit of            )
 Aimee Harrison Hutson                    )
(now known as Aimee Harrison Parris)        )

NOTICE OF HEARING

To:

Samuel S. Parris
1020 E. Wall Street
Mount Pleasant, SC 29464


Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this ___9___ day of May, 2017.


John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| C. Porter Schutt and Phyllis Dupont Schutt Trust ) | |
| Dated September 16, 1971 for the benefit ) | |
| of the issue of Sarah Schutt Harrison, ) | Case No. 196712 |
| Specifically: Trust for the benefit of ) | |
| Aimee Harrison Hutson ) | |
| (now known as Aimee Harrison Parris) ) | |

NOTICE OF HEARING

To:

James L. Parris
1020 E. Wall Street
Mount Pleasant, SC 29464

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this ___9___ day of May, 2017.

John R. Martin, Attorney

Ex 67

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| C. Porter Schutt and Phyllis Dupont Schutt Trust ) | |
| Dated September 16, 1971 for the benefit ) | |
| of the issue of Sarah Schutt Harrison, ) | Case No. 196712 |
| Specifically: Trust for the benefit of ) | |
| Aimee Harrison Hutson ) | |
| (now known as Aimee Harrison Parris) ) | |

## NOTICE OF HEARING

To:

G. D. Varn, III
8 Washington Street
Ehrhardt, SC 29081

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _7_ day of May, 2017.

John R. Martin, Attorney

Ex 68

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust    )
 Dated September 16, 1971 for the benefit           )
of the issue of Sarah Schutt Harrison,              )      Case No. 196712
Specifically: Trust for the benefit of              )
 Aimee Harrison Hutson                              )
(now known as Aimee Harrison Parris)                )

NOTICE OF HEARING

To:

James V. Sease, Jr
39 Depot Avenue
Ehrhardt, SC 29081

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _9_ day of May, 2017.

John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust  )
Dated September 16, 1971 for the benefit  )
of the issue of Sarah Schutt Harrison,  )      Case No. 196712
Specifically: Trust for the benefit of  )
Aimee Harrison Hutson  )
(now known as Aimee Harrison Parris)  )

NOTICE OF HEARING

To:
_____

Phyllis H. Ballantine
6245 Country Club Drive
Easton, MD 21601

    Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

    Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

    Given under my hand, this ___ day of May, 2017.

                      John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust   )
 Dated September 16, 1971 for the benefit         )
of the issue of Sarah Schutt Harrison,          )    Case No. 196712
Specifically: Trust for the benefit of          )
 Aimee Harrison Hutson               )
(now known as Aimee Harrison Parris)      )

### NOTICE OF HEARING

To:

Eugene T. Ballantine
2115 First Street NW
Washington, DC 20001


Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _7_ day of May, 2017.


John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust )
 Dated September 16, 1971 for the benefit )
of the issue of Sarah Schutt Harrison, )    Case No. 196712
Specifically: Trust for the benefit of )
 Aimee Harrison Hutson )
(now known as Aimee Harrison Parris) )

NOTICE OF HEARING

To: _____

Preston R. Ballantine
6245 Country Club Drive
Easton, MD 21601

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this __7__ day of May, 2017.

John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| C. Porter Schutt and Phyllis Dupont Schutt Trust ) | |
| Dated September 16, 1971 for the benefit ) | |
| of the issue of Sarah Schutt Harrison, ) | Case No. 196712 |
| Specifically: Trust for the benefit of ) | |
| Aimee Harrison Hutson ) | |
| (now known as Aimee Harrison Parris) ) | |

NOTICE OF HEARING

To: _____

Scott P. Harrison
209 Gun Club Lane
Richmond, VA 23221

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _9_ day of May, 2017.

John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust )
 Dated September 16, 1971 for the benefit )
of the issue of Sarah Schutt Harrison, )       Case No. 196712
Specifically: Trust for the benefit of )
 Aimee Harrison Hutson )
(now known as Aimee Harrison Parris) )

NOTICE OF HEARING

To:

McKelvey E. Harris
209 Gun Club Lane
Richmond, VA 23221


Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _____ day of May, 2017.


_____
John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| C. Porter Schutt and Phyllis Dupont Schutt Trust ) | |
| Dated September 16, 1971 for the benefit ) | |
| of the issue of Sarah Schutt Harrison, ) | Case No. 196712 |
| Specifically: Trust for the benefit of ) | |
| Aimee Harrison Hutson ) | |
| (now known as Aimee Harrison Parris) ) | |

NOTICE OF HEARING

To: _____

Samuel Harwell Harrison
c/o Scott P. Harrison
209 Gun Club Lane
Richmond, VA 23221

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this _____ day of May, 2017.

John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust )
Dated September 16, 1971 for the benefit          )
of the issue of Sarah Schutt Harrison,            )        Case No. 196712
Specifically: Trust for the benefit of            )
Aimee Harrison Hutson                             )
(now known as Aimee Harrison Parris)              )

NOTICE OF HEARING

To:

Renee DuPont Harrison
3712 North Broadway PMB456
Chicago, IL 60613

Please take note that on the 29th day of March 2017, the original of the attached copy, of
the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust
Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original
attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the
Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30
p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can
appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original
Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of
this document from your attorney.

Given under my hand, this ____ day of May, 2017.

John R. Martin, Attorney

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust )
 Dated September 16, 1971 for the benefit )
of the issue of Sarah Schutt Harrison, )          Case No. 196712
Specifically: Trust for the benefit of )
 Aimee Harrison Hutson )
(now known as Aimee Harrison Parris) )

NOTICE OF HEARING

To:

Elijah DuPont Drake
c/o Renee DuPont Harrison
3712 North Broadway PMB456
Chicago, IL 60613


Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29. 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this ___ day of May, 2017.


John R. Martin, Attorney

Ex 77

PROBATE COURT OF JEFFERSON COUNTY, ALABAMA

C. Porter Schutt and Phyllis Dupont Schutt Trust    )
  Dated September 16, 1971 for the benefit          )
of the issue of Sarah Schutt Harrison,              )      Case No. 196712
Specifically: Trust for the benefit of             )
 Aimee Harrison Hutson                              )
(now known as Aimee Harrison Parris)                )

NOTICE OF HEARING

To:

Mason Harrison Drake
Renee DuPont Harrison
3712 North Broadway PMB456
Chicago, IL 60613

Please take note that on the 29th day of March 2017, the original of the attached copy, of the Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison Family Trust Dated September 16, 1971 for the benefit of Aimee Harrison Hutson and issue, and the original attached copy of the Amended Petition to same was filed April 20, 2017 in the Office of the Judge of Probate of Jefferson County, Alabama and that the *12th day of October, 2017, at 2:30 p.m.* is appointed a day for the hearing thereof before Judge Alan King at which time you can appear if you see proper.

Your attorney received the 278 page Bank Court Accounting filed with the original Petition for Settlement on March 29, 2017. To save expenses, you can get an electronic copy of this document from your attorney.

Given under my hand, this  9  day of May, 2017.

John R. Martin, Attorney

```
********************
*** TX REPORT ***
********************


TRANSMISSION OK

TX/RX NO            4413
RECIPIENT ADDRESS   18772841084
DESTINATION ID
ST  TIME            05/04 12.17
TIME USE            02'47
PAGES SENT          3
RESULT              OK
```



NAJIAR
DENABURG, PC
Attorneys at Law

## FACSIMILE TRANSMITTAL

DATE: 5/4/17

TO: Death Certificate Vitals

NUMBER: 677 - 234 - 1734

Number of Pages (including cover sheet) 3

RE: Nanes Harrison Parris

order # w724234956

MESSAGE: Please find attached my id +

a copy of the first page of

the amended petition for settlement,

as requested for the requirement for

Death Certificate of above.

Thank you.

CONFIDENTIAL

Ex 79

IN THE PROBATE COURT OF JEFFERSON COUNTY, ALABAMA
(IN EQUITY)

IN THE MATTER OF THE C. PORTER SCHUTT      )
AND PHYLLIS DUPONT SCHUTT TRUST Dated      )
September 16, 1971 for the Benefit of the Issue of   )
Sarah Schutt Harrison, Specifically: The Schutt    )
Trust for the Benefit of Aimee Harrison Hutson     )
                                                    )
PHYLLIS H. BALLANTINE, SCOTT PRESTON        )
HARRISON, and RENEE DUPONT HARRISON,        )
    Respondents, Counterclaim and Crossclaim    )
    Plaintiffs                                  )

```
┌─────────────────────────────┐
│  FILED IN OFFICE            │
│  PROBATE COURT              │
│                             │
│      JUL 2 5 2017           │
│                             │
│   SHERRI C. FRIDAY          │
│    Judge of Probate         │
│ E.O.D.                      │
└─────────────────────────────┘
```

CASE NO. 196712

ANSWER OF RESPONDENTS, PHYLLIS H. BALLANTINE, SCOTT
PRESTON HARRISON AND RENEE DUPONT HARRISON
TO THE
PETITION, AS AMENDED, FOR FINAL SETTLEMENT AND DISCHARGE
OF BANCORPSOUTH BANK, AS CORPORATE CO-TRUSTEE OF THE
SCHUTT/HARRISON FAMILY TRUST DATED SEPTEMBER 16, 1971 FOR
THE BENEFIT OF AIMEE HARRISON PARRIS AND ISSUE,
AND FOR CONFIRMATION OR RATIFICATION OF SUCCESSOR
TRUSTEE

COME NOW, PHYLLIS H. BALLANTINE, SCOTT PRESTON HARRISON,

and RENEE DUPONT HARRISON ("Respondents") in response to BancorpSouth

Bank's Petition for Final Settlement of Corporate Co-Trustee of the Schutt/Harrison

Family Trust dated September 16, 1971 for the Benefit of Aimee Harrison Parris and

Issue, Discharge of Corporate Co-Trustee Upon Removal and Confirmation or

Ratification of Successor Trustee, as amended (the "Petition as Amended") filed in the

above-styled action answer and affirmatively asserts in defense of the Petition as

Amended the following:

**Ex 80**

1. Each and every allegation of the Petition as Amended not specifically admitted or qualified below is denied and strict proof demanded thereof.

2. Respondents incorporate herein by reference, as if fully stated herein, the allegations and averments of Respondents' Counterclaims and Crossclaims filed simultaneously with this Answer as additional Affirmative Defenses.

3. Respondents admit and assert that at least since September 17, 2010, BancorpSouth Bank, BancorpSouth Bank, Inc., BancorpSouth, BancorpSouth, Inc. and/or entities doing business as BancorpSouth or BancorpSouth Bank, including Fictitious Defendants A, B, and C described in Respondents' Counterclaims and Crossclaims (collectively referred to herein as "BancorpSouth" whether one or more) have acted as the corporate co-trustee of the trust held for the Benefit of Aimee Harrison, formerly known as Aimee Harrison Hutson, and allegedly known as Aimee Harrison Parris before her death (hereafter referred to as "Aimee"), which was established by C. Porter Schutt and Phyllis duPont Schutt (the "Trustors") by agreement dated September 16, 1971 (the "Trust Instrument"), as modified by settlement agreements and orders of the Circuit Court of Mobile County, Alabama and the order of the Court entered in this Case, No. 196712, on January 28, 2010 (hereinafter referred to as "Aimee's Alabama Land Trust").

4. Respondents admit that the principal place of administration of Aimee's Trust at all times since 2010 has been Jefferson County, Alabama.

5. Respondents admit that Aimee and the Respondents are the issue of Sarah Schutt Harrison.

- 2 -

Ex 81

6.  Respondents admit and assert that G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., have acted and continue to act as co-trustees of Aimee's Alabama Land Trust, but deny that G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., were legally appointed co-trustees of Aimee's Alabama Land Trust and assert that their appointment as co-trustees of Aimee's Alabama Land Trust was the product of fraud and undue influence by James L. Parris, Esq. and others.

7.  Aimee Harrison died on or about February 9, 2017 and was a resident of South Carolina at the time of her death.

8.  Respondents admit that Samuel S. Parris is the son of James L. Parris, Esq., but deny that Samuel S. Parris was adopted by Aimee before her death and aver that the Order and Decree of Adoption of the Family Court of Charleston County, South Carolina, entered November 1, 2016 purporting to decree the adoption of Samuel S. Parris by Aimee (the "Order and Decree of Adoption") is void and not entitled to credit, *inter alia*, because:

(a)  The Order and Decree of Adoption was procured through the active and intentional fraud of James L. Parris, Esq., Samuel S. Parris and others on the Family Court of Charleston County, South Carolina;

(b)  At the time of the purported adoption and entry of the Order and Decree of Adoption, Aimee was mentally incapacitated and incapable of filing the petition for or consenting to such purported adoption; and

- 3 -

**Ex 82**

(c)  The  Family  Court  of  Charleston  County,  South  Carolina,  lacked jurisdiction to enter the Order and Decree of Adoption not only because of the fraud perpetrated  upon  the  Family  Court  of  Charleston  County,  South  Carolina,  but  also because Aimee was not a resident of Charleston County South Carolina. The Family Court of Charleston County, South Carolina is a court of statutory, limited jurisdiction. Section 63-9-1120 of the South Carolina Code of Laws, which is the only authority for adult adoptions in South Carolina, states that "[a] petition for the adoption must be filed with the family court in the county where the adoptive parents reside." (emphasis added).

9. Respondents  admit  that  on  March  3,  2017,  the  Petitioner  received  a memorandum dated March 2, 2017 from the individual Co-Trustees purporting to remove BancorpSouth as the corporate co-trustee of Aimee's Alabama Land Trust, but deny that G. D. Varn, III, James V. Sease, Jr., or James L. Parris, Esq., were legally appointed as co-trustees of Aimee's Alabama Land Trust or have the authority to appoint or to remove BancorpSouth as the corporate co-trustee of Aimee's Alabama Land Trust or to appoint a successor corporate co-trustee for Aimee's Alabama Land Trust.

10. Respondents  admit  that  BancorpSouth,  acting  as  a  co-trustee  of  Aimee's Alabama Land Trust, has been, and continues to be, in possession and control of property in Aimee's Alabama Land Trust, but denies that BancorpSouth, as required by the Trust Instrument, has maintained possession and control of all property belonging to Aimee's Alabama  Land  Trust,  and,  as  more  fully  stated  in  Respondent's  Counterclaims  and Crossclaims filed simultaneously with this Answer, aver that BancorpSouth breached the

- 4 -

terms of the Trust Instrument, *inter alia*, by making distributions to or for the benefit of persons other than Aimee, including James L. Parris, Esq., who is not now and never has been a beneficiary of Aimee's Alabama Land Trust or otherwise entitled to distributions from Aimee's Alabama Land Trust.

11. Respondents aver that Aimee had no issue or lineal descendants, biological or otherwise, that Aimee's Alabama Land Trust terminated upon her death, and that all assets of Aimee's Alabama Land Trust are due to be distributed in three equal shares to Oakworth Capital Bank, in Mobile, Alabama, as trustee of the trusts held for the benefit of Respondents and Respondents' lineal descendants, which trusts are referred to in the Order of the Probate Court of Jefferson County, Alabama entered in this Case on January 28, 2010 as Renee's Trust, Scott's Trust and Phyllis's Trust (hereafter "Renee's Trust," "Scott's Trust," and "Phyllis's Trust").

12. With respect to "Renee's Trust," "Scott's Trust," and "Phyllis's Trust", Respondents, respectively, are qualified beneficiaries entitled to current distributions of income and/or principal, and, as such, are qualified beneficiaries entitled to current distributions of income and/or principal from Aimee's Alabama Land Trust.

13. Respondents admit that Oakworth Capital Bank, as trustee of Renee's Trust, Scott's Trust and Phyllis' Trust, is located at One Saint Louis Street, Suite 3200, Mobile, AL 36602, and is an interested person with respect to Aimee's Alabama Land Trust.

14. Respondents deny that Samuel S. Parris has any interest in Aimee's Alabama Land Trust or represents any person who has or might have any interest in Aimee's

- 5 -

Alabama Land Trust. unborn, unconceived or unascertainable lineal descendants who may become beneficiaries.

15. Respondents admit that G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., are over the age of 19, of sound mind, and interested persons with respect to Aimee's Alabama Land Trust, only because, jointly and severally, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., have assumed and exercised the powers of co-trustees of Aimee's Alabama Land Trust, and are due to account for their actions.

16. Respondents admit that Phyllis H. Ballantine, Eugene T. Ballantine, and Preston R. Ballantine, are over the age of nineteen (19), of sound mind, are qualified beneficiaries of Phyllis's Trust and that the addresses listed in the Petition as Amended for Phyllis H. Ballantine, Eugene T. Ballantine, and Preston R. Ballantine are correct.

17. Respondents admit that Scott Preston Harrison and McKelvey E. Harrison are over the age of nineteen (19) and of sound mind, and that Samuel Harwell Harrison is a minor, that Scott Preston Harrison, McKelvey E. Harrison, and Samuel Harwell Harrison are qualified beneficiaries of Scott's Trust and that the addresses listed for Scott Preston Harrison, McKelvey E. Harrison, and Samuel Harwell Harrison in the Petition as Amended are correct.

18. Respondents admit that Renee duPont Harrison is over the age of nineteen (19) and of sound mind, that Elijah DuPont Drake and Mason Harrison Drake are minors, that Renee DuPont Harrison, Elijah DuPont Drake, and Mason Harrison Drake are qualified beneficiaries of Renee's Trust and aver that the correct address for Renee duPont

- 6 -

Harrison, Elijah duPont Drake, and Mason Harrison Drake is 3750 N Lake Shore Drive, Apt #15A, Chicago, Illinois 60613.

19. Respondents deny that the documents attached to the Petition as Amended and which are labeled and referred to as "Exhibit 'B'" (collectively, "Petitioner's Exhibit B") constitute either an accounting or a report of BancorpSouth's acts and doings as a co-trustee of Aimee's Alabama Land Trust. Petitioner's Exhibit B is insufficient, *inter alia*, because fails to show:

    (a)   all receipts and disbursements occurring during the accounting period;

    (b)   gains and losses realized during the accounting period;

    (c)   two values for each asset or class of assets reasonably capable of valuation at the close of the accounting period, to wit:

        (1)   the asset acquisition value or carrying value; and

        (2)   the estimated current value if feasible;

    (d)   the identity of each known noncontingent liability or the estimated current amount of any such liability.

    (e)   the significant non-cash transactions affecting the assets in the trust; or

    (f)   the allocation of receipts and disbursements between income and principal.

20. Respondents admit that BancorpSouth entered into interested party transactions between BancorpSouth in its corporate capacity with  BancorpSouth as co-trustee of Aimee's Alabama Land Trust purporting to loan money to Aimee's Alabama Land Trust

- 7 -

and to secure the purported loan or loans by encumbering property of Aimee's Alabama Land Trust with a value far in excess of the amount BancorpSouth claims to have loaned to BancorpSouth as co-trustee of Aimee's Alabama Land Trust. Respondents deny that any money loaned to Aimee's Alabama Land Trust by BancorpSouth was for the benefit of Aimee or Aimee's Alabama Land Trust, that such transactions were impermissible self-dealing by BancorpSouth and James L. Parris, Esq., for whose benefit such transactions occurred, and that such transactions were, *inter alia*, a breach of trust by BancorpSouth and James L. Parris, Esq.

21. Respondents hereby elect to void all interested party transactions between BancorpSouth in its corporate capacity and BancorpSouth as co-trustee of Aimee's Alabama Land Trust, including any and all loans and all mortgages and other encumbrances purportedly granted by BancorpSouth and/or the other co-trustees of Aimee's Alabama Land Trust in favor of BancorpSouth. As more fully stated in Respondents' Counterclaims and Crossclaims, BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., acting as co-trustees of Aimee's Alabama Land Trust used engaged in the self-dealing transactions to buy a house located at 337 N. Civitas Street, Mount Pleasant, SC 29468 for the sole benefit of James L. Parris, Esq., who has had the sole and exclusive possession and occupation of the house, rent free, since the house was bought in 2012.

22. Respondents join in the request of BancorpSouth that the Court appoint a day for hearing a final settlement by BancorpSouth and further prays that the Court will order

- 8 -

G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., who have acted as co-trustees of Aimee's Alabama Land Trust to account at the same time, and in the same manner as BancorpSouth, to give such notice of same as is required by law, examine and audit the reports of account, state the same and render a decree charging BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., as co-trustees of Aimee's Alabama Land Trust for the damages caused to Aimee's Alabama Land Trust, Respondents and Phyllis's Trust, Renee's Trust and Scott's Trust, as the remainder beneficiaries of Aimee's Alabama Land Trust, by the many, and varied, acts of fraud, self-dealing, breach of fiduciary duty and breach of trust.

23.  Because of the many, and varied, acts of fraud, self-dealing, breach of fiduciary duty and breach of trust by BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., acting as co-trustees of Aimee's Alabama Land Trust, as well as Samuel S. Parris and Fictitious Parties D, E, and F, as identified in Respondents' Counterclaims and Crossclaims, Respondents deny that BancorpSouth entitled to any commission, fees, attorneys' fees or other expenses of accounting, but demand judgment against BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., jointly and severally, for the damages suffered by Aimee's Alabama Land Trust, Phyllis's Trust, Renee's Trust and Scott's Trust and the beneficiaries of such trusts, including Respondents, and pray that the Court will award Respondents' all amounts incurred by Respondents for attorneys' fees and expenses in holding BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., to account for their acts and doings and to

Ex 88

tax such attorneys' fees and expenses as costs of this proceeding against BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., jointly and severally, pursuant to Alabama Code § 34-3-60.

24. Respondents request the court to remove BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., as co-trustees of Aimee's Alabama Land Trust, and to enjoin BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., from taking any further actions as co-trustees of Aimee's Alabama Land Trust, or otherwise, with respect to the property of Aimee's Alabama Land Trust, except as expressly ordered by this Court, and to immediately restore to Aimee's Alabama Land Trust all property paid or distributed from Aimee's Alabama Land Trust to BancorpSouth, G. D. Varn, III, James V. Sease, Jr., James L. Parris, Esq., or Samuel S. Parris.

25. Respondents move the Court to enjoin BancorpSouth, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., from taking, attempting to take, or purporting to take any further actions as co-trustees of Aimee's Alabama Land Trust, including, but not limited to attempting to appoint any additional or successor co-trustee of Aimee's Alabama Land Trust.

26. Respondents deny that a guardian ad litem is needed in this proceeding because each Respondent represents his or her minor children and unborn and/or unascertained descendants, who are beneficiaries of Aimee's Alabama Land Trust and any other

- 10 -

Ex 89

remote, contingent beneficiaries of Aimee's Alabama Land Trust under the Alabama Uniform Trust Code, including, *inter alia*, Alabama Code § 19-3B-303.

C. Fred Daniels  (DAN005)

Steven A. Benefield  (BEN022)

Attorneys for Plaintiffs

**OF COUNSEL:**

**CABANISS, JOHNSTON, GARDNER,
DUMAS & O'NEAL LLP**
Park Place Tower
2001 Park Place North, Suite 700
Birmingham, Alabama  35203
(205) 716-5200

- 11 -

**Ex 90**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 25th day of July, served a true and correct copy of the foregoing upon the parties and counsel of record by first class U.S. Mail, postage prepaid as follows:

John R. Martin, Esq.
NajjarDenaburg, P.C.
2125 Morris Ave.
Birmingham, Alabama 35203

James L. Parris, Esq.
1020 E Wall Street
Mount Pleasant, SC 29464,

G.D. Varn, III
8 Washington Street
Ehrhardt, SC 29081

James V. Sease, Jr.
39 Depot Avenue
Ehrhardt, SC 29081

Samuel S. Parris
103 Church Street
Mount Pleasant, SC 29465

Oakworth Capital Bank, as Trustee
of the trust held for the Benefit
of Phyllis H. Ballantine
u/a dated September 16, 1971
One Saint Louis Street, Suite 3200
Mobile, AL 36602

Oakworth Capital Bank, as Trustee
of the trust held for the Benefit
of Renee duPont Harrison
u/a dated September 16, 1971
One Saint Louis Street, Suite 3200
Mobile, AL 36602

Oakworth Capital Bank, as Trustee
of the trust held for the Benefit
of Scott Preston Harrison
u/a dated September 16, 1971
One Saint Louis Street, Suite 3200
Mobile, AL 36602

Eugene T. Ballantine
2115 First Street NW
Washington, DC 20001

Preston R. Ballantine
6245 Country Club Drive
Easton, MD 21601

McKelvey E. Harrison
209 Gun Club Lane
Richmond, VA 23221

Scott Preston Harrison, as representative
of his minor son, Samuel Harwell
Harrison
209 Gun Club Lane
Richmond, VA 23221

Renee duPont Harrison, as representative
of her minor sons, Elijah DuPont
Drake
and Mason Harrison Drake
3750 N Lake Shore Drive, Apt #15A
Chicago, Illinois 60613

OF COUNSEL

- 12 -

Ex 91

## IN THE PROBATE COURT OF JEFFERSON COUNTY, ALABAMA
### (IN EQUITY)

IN THE MATTER OF THE C. PORTER SCHUTT )
AND PHYLLIS DUPONT SCHUTT TRUST Dated )
September 16, 1971 for the Benefit of the Issue of )
Sarah Schutt Harrison, Specifically: The Schutt )
Trust for the Benefit of Aimee Harrison Hutson )
 )
 )
PHYLLIS H. BALLANTINE, SCOTT PRESTON )
HARRISON, and RENEE DUPONT HARRISON )
 )
  Counterclaim and Crossclaim Plaintiffs, )
 )
vs. )
 )
BancorpSouth Bank, BancorpSouth Bank, Inc., )
BancorpSouth, BancorpSouth, Inc. and Fictitious )
Parties A, B and C being those entities doing )
business as BancorpSouth or BancorpSouth Bank )
and which at any time acted as a trustee of The )
Schutt Trust for the Benefit of Aimee Harrison )
Hutson; G. D. VARN, III; JAMES V. SEASE, JR.; )
JAMES L. PARRIS, Esq., SAMUEL SHANNON )
PARRIS; and Fictitious Parties D, E, and F, being )
those persons or entities aiding, abetting and/or )
conspiring with James L. Parris, Esq., Samuel S. )
Parris, and others to exploit, abuse, neglect and )
defraud Aimee Harrison and to misapply and to )
misappropriate the assets of The Schutt Trust for )
the Benefit of Aimee Harrison Hutson, who are )
otherwise unknown, )
 )
  Counterclaim and Crossclaim Defendants. )
 )

FILED IN OFFICE
PROBATE COURT

JUL 2 5 2017

ALAN L. KING
Judge of Probate
E.O.D.

CASE NO. 196712.

### VERIFIED COUNTERCLAIMS AND CROSSCLAIMS
### OF
### PHYLLIS H. BALLANTINE, SCOTT PRESTON HARRISON AND
### RENEE DUPONT HARRISON

Come Now Counterclaim and Crossclaim Plaintiffs **Phyllis H. Ballantine, Scott Preston Harrison, and Renee duPont Harrison** ("Plaintiffs") and (i) counterclaim

[B0975244 1]

Ex 92

against Defendants BancorpSouth Bank, BancorpSouth Bank, Inc., a Mississippi corporation, BancorpSouth, BancorpSouth, Inc., a Mississippi corporation, and Fictitious Parties A, B and C being those entities doing business as BancorpSouth or BancorpSouth Bank or otherwise a predecessor in interest or successor in interest or under common ownership or control with BancorpSouth Bank, Inc., and/or BancorpSouth, Inc. who are otherwise unknown (collectively referred to as "BancorpSouth"), which at any time acted as trustee of the trust for the Benefit of Aimee Harrison (formerly Aimee Harrison Hutson and subsequently, allegedly, known as Aimee Harrison Parris, and hereafter referred to as "Aimee"), held under an agreement dated September 16, 1971 (the "Trust Instrument"), as modified by settlement agreements and orders of the Circuit Court of Mobile County, Alabama and this Court, and established by C. Porter Schutt and Phyllis duPont Schutt (the "Trustors") ("Aimee's Alabama Land Trust") and (ii) crossclaim against Defendants G. D. Varn, III, James V. Sease, Jr., James L. Parris, Esq., Samuel S. Parris, and Fictitious Parties D, E, and F, being those persons or entities aiding, abetting and/or conspiring with James L. Parris, Esq., Samuel S. Parris, and others, to exploit, abuse, neglect and defraud Aimee and to misapply and to misappropriate the assets of Aimee's Alabama Land Trust, other trusts for Aimee's benefit and Aimee's entire estate (including BancorpSouth, each a "Defendant" and collectively the "Defendants") as follows:

Ex 93

**A. Summary of Claims.**

1.     Until her death on February 9, 2017, Aimee was the beneficiary of several multi-generational trusts created by her grandparents, C. Porter Schutt and Phyllis duPont Schutt, and by other ancestors. During Aimee's life the trusts held millions of dollars of property for Aimee's benefit and distributed millions of dollars of property purportedly to or for Aimee's benefit.

2.     Aimee suffered physical and mental impairments as a result of untreated psychosis, bi-polar disorder, and alcohol abuse which diminished her capacity at all relevant times and rendered her mentally incapacitated in and after June 2004 when Aimee experienced a severe psychotic breakdown and was involuntarily admitted to a psychiatric hospital suffering from persecutory delusions, experiencing tactile and olfactory hallucinations, a danger to herself and to others, with no insight into her condition.

3.     James L. Parris, Esq. has been a licensed, practicing lawyer in South Carolina since 1987. James L. Parris, Esq. has been a licensed, practicing lawyer in Alabama since 1984. At all times relevant, a client-lawyer relationship existed between Aimee and James L. Parris, Esq. A client-lawyer relationship also existed between Plaintiffs and James L. Parris, Esq. from 2001 until 2003.

4.     From around 1999, throughout Aimee's life, and since her death, James L. Parris, Esq. has engaged in a plan, pattern, practice and scheme to exploit Aimee's diminished capacity and to convert Aimee's personal and trust assets to his personal use and benefit and the benefit of others.

5.     Preying on Aimee's physical and mental impairments caused by bi-polar disorder, alcohol and drugs, and ultimately terminal cervical and lung cancer, James L. Parris, Esq. engaged in a long-term, adulterous sexual relationship with Aimee, which caused Aimee's husband, Elliott Hutson to file for divorce in July, 2002. After 1999, James L. Parris, Esq. refused to have sex with his wife and sued for divorce in March, 2004.

6.     After obtaining Aimee's release from a psychiatric hospital in 2004, James L. Parris, Esq., using his position as Aimee's lawyer and taking advantage of Aimee's diminished capacity and lack of insight into her own condition, engaged in a calculated pattern and practice of behavior to isolate Aimee from her family and friends by enabling, encouraging and perpetuating Aimee's persecutory delusions and general paranoia, which caused her to be hostile to her family and friends. James L. Parris, Esq. enabled Aimee to avoid, and acted to prevent Aimee from receiving, medical and psychological treatment that she desperately needed.

7.     As part of his plan and scheme, James L. Parris, Esq. claims to have married Aimee in or around 2007 and, in 2009, drafted a will for Aimee that devised her entire estate to trusts for the benefit of James L. Parris, Esq. and purported to exercise all powers of appointment in trusts or otherwise held by Aimee for the benefit of James L. Parris, Esq.

8.     As a result of James L. Parris, Esq.'s undue influence, in 2010 Aimee appointed James L. Parris, Esq. to serve as a Co-Trustee of Aimee's Alabama Land Trust

along with BancorpSouth, G. D. Varn, III, and James V. Sease, Jr., all of whom accepted the appointment and have served as Co-Trustees since appointment.

9.     Violating a principal purpose of Aimee's Alabama Land Trust, the Co-Trustees clear-cut almost all of the timberland held in Aimee's Alabama Land Trust, which was the largest asset of Aimee's Alabama Land Trust and distributed the proceeds from clear-cutting the timber and almost all other liquid assets from Aimee's Alabama Land Trust to the possession or control of James L. Parris, Esq., who transferred them into entities and accounts for his personal benefit, and not the benefit of Aimee.

10.     On January 20, 2012, the Co-Trustees caused Aimee's Alabama Land Trust to borrow $601,910.52 (the "Loan") from Co-Trustee BancorpSouth to buy a house located at 337 North Civitas Street, Mt. Pleasant, Charleston County, S.C., (the "Civitas House"). James L. Parris, Esq., has had the exclusive use and possession of the Civitas House since its purchase, living in it continuously as his principal residence, but has not paid rent or made any other payments for such. At no time was the Civitas House Aimee's residence.

11.     The Co-Trustees encumbered not only the Civitas House, but almost all of the timberland in Aimee's Alabama Land Trust, valued at $3,397,096, with mortgages to secure payment of the Loan. The Loan and mortgages are in default because the Co-Trustees have not paid Loan payments, property taxes and insurance premiums as required. Now, to pay the Loan, the Co-Trustees are attempting to sell, not the Civitas House, but the timberland in Aimee's Alabama Land Trust in violation of the Trustors' expressed intent as discussed below.

12.     For several years before Aimee died, Aimee's mother, Sarah Schutt Harrison, gave Aimee $25,000.00 worth of stock. The stock was transferred to an account for James L. Parris, Esq. at Charles Schwab.

13.     In early 2015, a trust created by Aimee's grandmother, Phyllis duPont Schutt (not Aimee's Alabama Land Trust) distributed approximately $2.4 million to Aimee. Upon information and belief, some or all of this money was taken by James L. Parris, Esq.

14.     In early 2016, a trust created by Aimee's great-grandparents, Louise and Harold Schutt, distributed approximately $1.4 million to Aimee. James L. Parris, Esq., used the money to buy real estate referred to as the Auckland Plantation, located at 610 Saxby Hill Road, Waterboro, S.C., Colleton County, S.C., for $1.4 million cash, with title placed in his individual name.

15.     In October 2016, recognizing that if Aimee died before her mother, James L. Parris, Esq. would lose access to millions of dollars of trust assets, James L. Parris, Esq. acted to avoid that result. While Aimee was incapacitated with terminal cervical and lung cancer in a hospital intensive care unit, and subsequently discharged directly into hospice for palliative care, James L. Parris, Esq., Samuél S. Parris, and Fictitious Defendants D, E, and F, and others whose identities are unknown, conspired to file a petition for Aimee to adopt Samuel S. Parris, the 23-year-old son of James L. Parris, Esq., by "consent," pursuant to Section 63-9-1120 of the South Carolina Code of Laws, which resulted in an Order and Decree of Adoption entered by the Family Court of Charleston County, South Carolina on November 1, 2016. The Order and Decree of

Adoption was procured through a fraud on the court in that Aimee lacked the capacity to consent to the adoption and was not subject to the jurisdiction of the court.

16.     On February 24, 2017 James L. Parris, Esq. notified BancorpSouth of Aimee's death and of Aimee's purported adoption of Samuel S. Parris. On March 3, 2017, the Individual Co-Trustees removed BancorpSouth as Corporate Co-trustee.

17.     On February 28, 2107, James L. Parris, Esq. obtained an "Order of Informal Probate" for the 2009 Last Will and Testament that James L. Parris, Esq. drafted for Aimee from the Probate Court of Colleton County, South Carolina, which also appointed James L. Parris, Esq. as the Personal Representative.

18.     On March 13, 2017, James L. Parris, Esq., as Co-Trustee of Aimee's Alabama Land Trust, with the consent of Co-Trustees G. D. Varn, III, and James V. Sease, Jr., but without any legal authority and in violation of the terms of the Trust Instrument, executed a deed as Co-Trustee of Aimee's Alabama Land Trust purporting to convey real property, located in Monroe County, Alabama, from Aimee's Alabama Land Trust to Samuel S. Parris and caused the deed to be recorded in the Office of the Probate Judge of Monroe County, Alabama in Deed Book 855, Page 582 on March 17, 2017. A true and correct copy of the deed is attached hereto as Exhibit A and incorporated herein by reference.

19.     Defendants have improperly managed, invested, distributed, received and otherwise converted and misapplied the assets of Aimee's Alabama Land Trust, violating duties owed to and damaging Aimee and Plaintiffs. Defendants' actions constitute bad faith, intentional, wanton, and/or negligent breaches of trust, breaches of fiduciary duty

{B0975244 1}                                          7

Ex 98

and co-fiduciary duty, including the duties of loyalty, impartiality, prudent administration, and prudent investment, self-dealing, fraud, fraudulent conveyances, conspiracy to defraud, conspiracy to deprive remainder beneficiaries of the benefits of Aimee's Alabama Land Trust and tortious interference with beneficiaries' rights in Aimee's Alabama Land Trust for which relief is demanded in this Counterclaim and Crossclaim as detailed below.

**B. Aimee and the Alabama Land Trust.**

20.     The Trustors created the Alabama Land Trust to hold, manage and preserve their beloved working farm, including 25,500 acres of timberland in and around Vredenburgh, Alabama, for the benefit of the lineal descendants of the Trustors' three children: Charles P. Schutt, Jr.; Sarah Schutt Harrison; and Caroline Schutt Brown. A copy of the Trust Instrument is attached as Exhibit B.

21.     In a 2003 settlement of a proceeding in the Circuit Court of Mobile, Alabama, the Alabama Land Trust was divided into three separate trusts, one for the descendants of each child of the Trustors. In a 2009 settlement of a proceeding commenced in this Court in 2007, the Alabama Land Trust for Sarah Schutt Harrison's descendants was divided into four trusts, one for each of Sarah Schutt Harrison's children, Plaintiffs and Aimee, and their lineal descendants.

22.     As modified by the order of this Court, if a beneficiary dies without a surviving lineal descendant, the trust for the deceased beneficiary shall be distributed to trusts for the benefit of the other lineal descendants of the deceased beneficiary's parents, if any. Except as modified by the 2003 and 2009 Settlement Agreements and orders of

the Mobile County Circuit Court and this Court, the Trust Instrument states the terms applicable to all of the Alabama Land Trusts.

23.     From 1997 until her death, Aimee lived in various locations in the state of South Carolina. Aimee lived at 630 Rue de Muckle, Mount Pleasant, South Carolina until 2004. Afterwards Aimee resided at her "Country House" located at 16920 Main Highway, Olar, S.C. in Bamberg County, South Carolina until "evil spirits" forced her to leave. Afterwards, Aimee lived in a house owned by James L. Parris, Esq., through an LLC, located at 251 Madison St., in Ehrhardt, S.C. (the "Ehrhardt House") until 2016 when her attorney, James L. Parris, Esq., used $1.4 million distributed to Aimee from another trust to buy the Auckland Plantation.

24.     Sometime after January 28, 2010, although not competent to do so, and unduly influenced by James L. Parris, Esq. and others, Aimee purported to appoint G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., to be Individual Co-Trustees of Aimee's Alabama Land Trust. G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., assumed the duties of Co-Trustees of Aimee's Alabama Land Trust purportedly for Aimee's benefit, and continue to act as Co-Trustees of Aimee's Alabama Land Trust.

25.     Sometime before September 17, 2010, G. D. Varn, III, James V. Sease, Jr., and James L. Parris, Esq., acting as Individual Co-Trustees of Aimee's Alabama Land Trust, removed Wachovia Bank, N.A. as the Corporate Co-Trustee of Aimee's Alabama Land Trust and appointed BancorpSouth to serve as Corporate Co-Trustee of Aimee's Alabama Land Trust on and after September 17, 2010.

26.   Aimee died on February 9, 2017 having never given birth to a child. Therefore, the Alabama Land Trusts held for the benefit of Plaintiffs and Plaintiffs' lineal descendants ("Plaintiffs' Alabama Land Trusts") are entitled to distribution of the assets of Aimee's Alabama Land Trust and Plaintiffs have been beneficiaries entitled to current distributions from Aimee's Alabama Land Trust since Aimee's death.

**C. James L. Parris, Esq.'s Exploitation of Aimee.**

27.   In 1998 James L. Parris, Esq. suffered serious injuries, including head trauma, which left him unable to return to the full-time practice of law. Although he continued to practice law with the firm of Buist, Moore, Smythe & McGee, P.A., in Charleston, South Carolina, until sometime in the year 2000 or 2001, disability insurance provided much of his income. By 2004 James L. Parris, Esq.'s expenses exceeded his income from work and disability insurance by almost $2,000 per month and he had assets with a total value of around $500,000.

28.   From 1998 through 2004, James L. Parris, Esq. became increasingly reclusive, rigid, critical, and controlling, emotionally abusive and physically unavailable to his wife, Shannon Parris, discontinuing all sexual relationship with his wife, without explanation, from about 1999 and after. As James L. Parris, Esq. became more and more reclusive and controlling, he discouraged his wife's friendships and association with others, particularly with her family.

29.   James L. Parris, Esq. used money as a means to control his wife and to keep her in the marriage. Throughout their marriage, James L. Parris, Esq. controlled all of the

couple's money, including properties and monies which were Shannon Parris's property through her family inheritances.

30.     At the time James L. Parris, Esq. first represented Aimee, she was married to William Elliott Hutson, and James L. Parris, Esq. was married to Shannon C. Parris. In addition to a professional relationship, James L. Parris, Esq., and his wife, Shannon Parris, socialized with Aimee and Elliott Hutson. After Aimee and Elliott Hutson had dinner in the Parris's home on one occasion, James L. Parris, Esq. said to Shannon Parris that Aimee had all the money in the family and that James L. Parris, Esq. didn't like the way Elliott Hutson treated Aimee.

31.     According to Shannon Parris, James L. Parris, Esq. was very driven by money.

32.     In or about 2002 or 2003, Shannon Parris discovered that James L. Parris, Esq. had purchased land in Bamberg County, S.C. About the same time, James L. Parris, Esq., through an LLC he owned, bought the Ehrhardt House which is near his Bamberg County, S.C. property, and which is close to Aimee's Country House in Olar, S.C. Shannon Parris learned that James L. Parris, Esq. had purchased the Ehrhardt House only when her children told her about it.

33.     James L. Parris, Esq. carried on his adulterous relationship with Aimee, regularly visiting Aimee with one or both of his preteen children, at Aimee's Country Home or at the Ehrhardt House, both of which are located in Bamberg County, S.C., or at an apartment that James L. Parris, Esq. secretly rented in downtown Charleston, which

Shannon Parris discovered shortly before James L. Parris, Esq. left the law firm of Buist, Moore, Smythe & McGee, P.A.

34.     James L. Parris, Esq.'s children called Aimee "Daddy's client friend."

35.     James L. Parris, Esq.'s sexual relationship with Aimee led Aimee's husband, Elliott Hutson, to leave their marriage in June, 2002, and to file for divorce in July, 2002, at which time Aimee moved into a house at 630 Rue de Muckle, Mount Pleasant, South Carolina.

36.     James L. Parris, Esq. separated from his wife, Shannon Parris, on or about March 2, 2004 shortly after filing a report with the South Carolina Department of Social Services falsely claiming that Shannon Parris sexually abused her children, changing the locks on their house, refusing Shannon Parris access to her children for over two months, and forcing both of his children to be examined, needlessly, for evidence of sexual abuse. The South Carolina Department of Social Services, the Lowcountry Children's Center, and the Mt. Pleasant, S.C. Police Department investigated and found no basis whatsoever for the allegations of sexual abuse. The false report was obviously an aggressive tactical, legal maneuver to gain an advantage in the divorce proceeding on custody of the couple's children and on issues of alimony and child support, and to divert attention from James L. Parris, Esq.'s exposing his minor children to his illicit relationship with Aimee, and from his habit of watching pornographic television shows in the midst of family gatherings.

37.     Shannon Parris countersued for divorce alleging James L. Parris, Esq.'s relationship with his paramour, Aimee, was the reason for the break up of the parties' marriage, the reason James L. Parris, Esq. stopped having a sexual relationship with his

wife and moved out of their bedroom and the reason James L. Parris, Esq. falsely and maliciously reported to the South Carolina Department of Social Services, the Lowcountry Children's Center and the Town of Mount Pleasant Police Department that Shannon Parris sexually abused her children.

**D. Aimee's Psychotic Breakdown.**

38.    In June, 2004, after a local mental health professional alerted Aimee's sister, Renee duPont Harrison, that Aimee was suffering a severe psychotic breakdown, Aimee was involuntarily admitted to the Medical University of South Carolina ("MUSC") Institute of Psychiatry. The physicians examining Aimee stated that Aimee was "suffering persecutory delusions, experiencing tactile and olfactory hallucinations, was a danger to herself and others who she claimed she would shoot if they came to her house." She had "no insight into her condition." She "believes the Dixie Mafia is out to get her, she has a microchip planted in her knee, believes her house is contaminated [with] radiation. . . . She is sleeping with a knife. . . . [She] has taken lead out of curtains, and taped them to her leg to protect self [sic] from radiation." *See* Licensed Physician Examinations for Emergency Admission and Application for Involuntary Emergency Hospitalization for Mental Illness.

39.    Aimee was considered a danger to herself and others in part because in April 2004, she had been arrested for and pleaded guilty to a felony charge for carrying and displaying a pistol in a public place.

40.    James L. Parris, Esq. encouraged witnesses to withhold information about Aimee's belief that she was being chased by helicopters and other elements of the "Dixie

Mafia" as well as her other hallucinations and symptoms, in the MUSC proceedings and obtained her discharge. Thereafter, James L. Parris, Esq. prevented Aimee from receiving the long-term medical and psychological treatment that Aimee desperately needed.

**E. Isolation from Family and Friends.**

41.     After June 2004 Aimee's siblings, cousins and friends never saw Aimee again. All communications from Aimee's family and friends had to be directed to James L. Parris's law office, but phone calls from Aimee's siblings, cousins and close friends were never returned. After 2004, Aimee's family no longer knew where she was living nor were they able to have any contact with her. Aimee was isolated from anyone who had been part of her life before that time.

42.     Between 2004 and 2017 Aimee's mother annually attempted to see Aimee in Charleston, South Carolina, either at James L. Parris, Esq.'s law office or at a location determined by James L. Parris, Esq. Most of the times James L. Parris, Esq. failed to return Sarah Schutt Harrison's telephone calls. On some occasions James L. Parris, Esq. said he would bring Aimee to see Sarah Schutt Harrison at her hotel in Charleston, but would appear without Aimee, or would not show up for the meeting at all.

43.     In 2010 Sarah Schutt Harrison met with Aimee at a Florida hotel. Aimee was in a manic state, exhibiting classic bi-polar, grandiose behavior. In 2011 James L. Parris, Esq. allowed Sarah Schutt Harrison to visit Aimee at his house in Mt. Pleasant, South Carolina, very briefly, with James L. Parris, Esq. present the entire time. In 2013 Sarah Schutt Harrison met Aimee very briefly in the front yard of the Mt. Pleasant house.

44.    Sarah Schutt Harrison was not allowed to see Aimee again until October, 2016 when James L. Parris, Esq., telephoned Sarah Schutt Harrison at her home in Delaware to tell her that Aimee was dying and if she wanted to see her alive that she should come to Charleston.

45.    After Sarah Schutt Harrison arrived in Charleston, South Carolina, James L. Parris, Esq. told her that one day in September, 2016 Aimee left her home in Ehrhardt, S.C., but did not return. Several days later Aimee was discovered collapsed and bleeding from her mouth in front of James L. Parris, Esq.'s Civitas House in Mt. Pleasant, South Carolina. Aimee was taken to the intensive care unit of Roper St. Francis Hospital in Charleston, South Carolina suffering from end stage cervical cancer, lung cancer, and other tumors and diseases.

46.    James L. Parris, Esq., permitted Aimee's mother to visit Aimee briefly in the intensive care unit of the hospital, but only in the presence of James L. Parris, Esq. Among other topics, Aimee discussed her burial arrangements with her mother during the visit, but said nothing about adopting Samuel S. Parris.

47.    After Sarah Schutt Harrison's visit with Aimee in the hospital, James L. Parris, Esq., communicated through a string of text messages to Sarah Schutt Harrison that no one would be allowed to visit with Aimee or to talk with her by telephone.

48.    Aimee's condition was so dire that she was discharged from the hospital to be placed in hospice receiving only palliative care as she died.

49.    On February 9, 2017 James L. Parris, Esq. called Aimee's mother to say that Aimee was dying and Sarah Schutt Harrison should come immediately if she wanted

{B0995244 1}                                         15

to see Aimee alive. Sarah Schutt Harrison arrived the same day but not before Aimee died. Sarah Schutt Harrison asked to see Aimee's house and James L. Parris, Esq. took her to Auckland Plantation. Based on Sarah Schutt Harrison's observation of Aimee's residence, Aimee had been living neglected and alone. The scene was a shocking mess with scattered cushions on the floor stained with blood, vomit and excrement; piles of dirty clothing; and the bathroom covered in blood and vomit. Obviously, James L. Parris, Esq. had continued his pattern of neglect and isolation of Aimee, and Aimee had been in the house without hospice care or even appropriate housekeeping assistance.

**F. James L. Parris, Esq.'s Scheme to Convert Aimee's Assets and Misapply Assets of Aimee's Alabama Land Trust.**

50.   James L. Parris, Esq. has engaged in a pattern, practice and scheme to convert Aimee's personal and trust assets to his personal use and benefit from at least 2002 until Aimee's death and since her death. James L. Parris, Esq.'s scheme included taking advantage of his position of trust and confidence as Aimee's lawyer by engaging in an illicit sexual relationship with Aimee, knowing that Aimee was vulnerable due to her untreated psychosis, bi-polar disorder, illegal drug use and alcohol abuse, isolating Aimee from her family and friends, and taking no action to help his client seek assistance for her mental illnesses, or for the physical illnesses that led to her untimely death.

51.   From 2007 until 2010, James L. Parris, Esq., represented himself to Plaintiffs and others in this matter only as Aimee's lawyer. James L. Parris, Esq. claims, however, to have married Aimee in 2007 but to have kept it secret from Aimee's family until sometime after that proceeding ended in 2010.

Ex 107

52.    No marriage certificate or license for the marriage of Aimee and James L. Parris, Esq. can be found in the public records of the State of South Carolina. Notwithstanding James L. Parris, Esq.'s claim to have married Aimee, they lived in houses in different counties.

53.    On information and belief, Plaintiffs aver that Aimee did not marry James L. Parris, Esq. Alternatively, if Aimee did purport to marry James L. Parris, Esq., the marriage was void because Aimee lacked the mental capacity to consent to the marriage and suffered from the fraud, exploitation, and undue influence of James L. Parris, Esq.

54.    In 2009, James L. Parris, Esq. drafted a Last Will and Testament for Aimee reciting that she was married to James L. Parris, Esq., devising her entire estate to trusts for the benefit of James L. Parris, Esq., and appointing James L. Parris, Esq. to serve as the Personal Representative. The will demonstrates James L. Parris, Esq.'s scheme to exploit other trusts by purporting to exercise all powers of appointment under trusts created by Aimee's ancestors, or otherwise, in favor of James L. Parris, Esq.

55.    The will, if executed by Aimee, was procured through the fraud, duress, and undue influence of James L. Parris, Esq. and others at a time when Aimee was not competent to execute a will. James L. Parris, Esq. submitted Aimee's purported will to the Probate Court of Colleton County, South Carolina and received an "Order of Informal Appointment" on February 28, 2017. Although the will recited that Aimee was a resident of Bamberg County, South Carolina, in the verified Application for Informal Probate of Will and Appointment, James L. Parris, Esq. stated that Aimee's domicile at death was 608 Saxby Hill Rd, Walterboro, Colleton County, South Carolina.

**G. Improper Distributions**.

56.     Violating a principal purpose of Aimee's Alabama Land Trust, the Co-Trustees clear-cut almost all of the timberland in Aimee's Alabama Land Trust, which was the largest asset of Aimee's Alabama Land Trust.

57.     Upon information and belief, the Co-Trustees distributed the proceeds from clear-cutting the timber and other distributions to Co-Trustee James L. Parris, Esq., who transferred them into an entity named the "Parris Trust" for his personal benefit, and not the benefit of Aimee.

58.     At no time has James L. Parris, Esq. been entitled to distributions or any other benefit from Aimee's Alabama Land Trust.

59.     Distributions by the Co-Trustees from Aimee's Alabama Land Trust have exhausted almost all the cash and other liquid assets of Aimee's Alabama Land Trust, and left Aimee's Alabama Land Trust with no means to replenish the cash other than selling the timberland held by the Co-Trustees.

60.     By clear-cutting the timber in a short period of time, the Co-Trustees reduced the value of the land in the trust by as much as $3,000,000 and violated the Trustors' expressed intent, and a primary purpose of the trust, to be good stewards of the land in Alabama and to preserve the investment for multiple generations.

**H. Purchase of Home for the Benefit of James L. Parris, Esq.; Mortgages and Sale of Timberland**.

61.     Everything about the Loan, the purchase of the Civitas House, James L. Parris, Esq.'s living in the Civitas House without paying rent or other expenses,

mortgaging the Civitas House and the timberland to secure payment of the Loan, and attempting to sell the timberland to generate money to pay the Loan breached the fiduciary duties of the Co-Trustees.

62.    When new, the Co-Trustees valued the Civitas House at $640,000. The Co-Trustees valued the timberland in Aimee's Alabama Land Trust at $3,397,096. Pledging $4,037,096 in real property to secure a $601,910.52 loan is excessive, overreaching, imprudent, and a breach of the Co-Trustees' fiduciary duties.

63.    Because the Co-Trustees imprudently distributed almost all liquid assets from Aimee's Alabama Land Trust, leaving only $1,693.40 of liquid assets according to BancorpSouth's Petition for Final Settlement, the Co-Trustees have failed to make payments on the Loan, causing the Loan to become delinquent, causing the Loan balance to grow to $631,194.02, and placing the assets of Aimee's Alabama Land Trust at risk of loss.

64.    The Co-Trustees have failed to pay the property taxes levied on the Civitas House and have failed to pay premiums for hazard insurance on the Civitas House as required by the mortgages. BancorpSouth has attempted to communicate with James L. Parris, Esq., about paying the property taxes and hazard insurance premiums on the Civitas House but James L. Parris, Esq. has failed or refused to respond.

65.    BancorpSouth has engaged a real estate broker to sell timberland owned by Aimee's Alabama Land Trust so that BancorpSouth can repay the Loan to itself and presumably to make additional distributions to or for James L. Parris, Esq. or Samuel S. Parris. The real estate broker is actively marketing the property for sale.

66.     The primary purpose of the Alabama Land Trust, and Trustors' intent in creating the Alabama Land Trust, was to preserve their beloved Alabama farm and timberland for the long term benefit and enjoyment of their descendants. The Trustors believed strongly in the value of land and timber as investments. The Trustors repeatedly instructed that the timber should only be cut selectively and never clear-cut absent insect infestation or natural disaster. The Co-Trustees ignored the Trustors' intent by listing the timberland for sell. A sale of the property would violate a primary purpose of the trust.

67.     The Co-Trustees have contracted to sell various portions of the timberland which are scheduled to close on or about July 26, 2017. Upon information and belief, the Co-Trustees intend to distribute the money to Samuel S. Parris as soon as it is received.

**I. The Purported Adoption of Samuel S. Parris by Aimee.**

68.     While Aimee was incapacitated, dying of terminal cancer in the hospital intensive care unit or in hospice and palliative care, James L. Parris, Esq., conspiring with Samuel S. Parris and others, Fictitious Defendants D, E, and F, caused a petition to be filed in the Family Court of Charleston County, South Carolina, purportedly by Aimee, to adopt the 23-year-old son of James L. Parris, Esq., Samuel S. Parris, by consent, pursuant to Section 63-9-1120 of the South Carolina Code of Laws (hereafter "Section 1120") in the Family Court of Charleston County, South Carolina in or about October, 2016.

69.     In an Order and Decree of Adoption entered on November 1, 2016, the same day as the alleged "hearing" before the court, the Family Court of Charleston County, South Carolina stated that the purpose of the adoption was "to affirm the familial relationship between them [Aimee and Samuel S. Parris], and to effectuate [Aimee's]

estate plan as more fully set forth in her Last Will and Testament." A true and correct copy of the Order and Decree of Adoption is attached as Exhibit C and incorporated by reference.

70.     In fact, the purported adoption of Samuel S. Parris by Aimee was simply the next step in the scheme of James L. Parris, Esq. to convert and misappropriate all of the property of his client, Aimee. Recognizing that if Aimee's mother survived Aimee that millions of dollars of trust assets would be taken away from him, James L. Parris, Esq. conspired with his son to avoid that result.

71.     The purported petition for adoption and the entire proceeding before the Family Court of Charleston County, South Carolina was a fraud on the court intended for no purpose but to effect a transfer of the assets of Aimee's Alabama Land Trust (and other trusts held for Aimee's benefit during her life) that is prohibited by Section IV(D) of the Trust Instrument, which states

> D - Spendthrift Provision
>
> The interest of any beneficiary in either income or principal of any trust hereunder shall not be alienated or in any other manner assigned or transferred by such beneficiary . . .

72.     James L. Parris, Esq. knew at the time of the purported adoption that an Order and Decree of Adoption creating a right in Samuel S. Parris to inherit from Aimee in intestacy was irrelevant because he had drafted and obtained Aimee's signature on a purported Last Will and Testament naming him as the sole devisee and Personal

Representative. James L. Parris, Esq. also knew that any Last Will and Testament of Aimee would be self-executing so that "effectuating" Aimee's "estate plan as more fully set forth in her Last Will and Testament" was mere pretext.

73.    The Order and Decree of Adoption states that the only evidence before the court was the testimony of Samuel S. Parris and an affidavit, purportedly executed by Aimee, submitted by counsel. Contrary to the finding that "[n]either [Aimee or Samuel S. Parris] was under the influence of any drugs, alcohol, or anything else, including stress, which may have impaired his or her judgment relating to these matters," Aimee chronically abused illegal drugs and alcohol for years, suffered from bi-polar disorder, persecutory delusions, tactile and olfactory hallucinations, and had no insight into her condition. Aimee was too ill to attend the alleged "hearing" before the court because she was either in the hospital intensive care unit or on hospice supposedly with palliative care only, dying of terminal cancer. Any testimony by Samuel S. Parris or by the purported affidavit of Aimee that Aimee "was [not] under the influence of any drugs, alcohol, or anything else, including stress" was nothing short of perjury.

74.    Notwithstanding any testimony by Samuel S. Parris at the "hearing" regarding his relationship with Aimee, Samuel S. Parris admitted after Aimee's death that he "barely knew her, [he] was not close to her and [he] knew she had tantrums." Neither Samuel S. Parris nor James L. Parris, Esq. attended Aimee's funeral. Samuel S. Parris sent Aimee's ashes to her family by overnight delivery. The "familial relationship" described in the Order and Decree of Adoption did not exist. Testimony to that effect was false.

75.     The Family Court of Charleston County, South Carolina is a court of limited, statutory jurisdiction. Section 1120 requires a petition for adult adoption be filed in the South Carolina Family Court in the county where the adopting parent resides. The requirement is jurisdictional. Aimee was a resident of Colleton County, South Carolina, before, at the time of, and after the adoption decree was entered, not Charleston County, South Carolina, as stated in the Order and Decree of Adoption. Contrary to the finding in the Order and Decree of Adoption, the Family Court of Charleston County, South Carolina lacked jurisdiction over Aimee because Aimee was not a resident of Charleston County, South Carolina. Therefore, the Family Court of Charleston County, South Carolina lacked subject matter jurisdiction in the proceeding and the Order and Decree of Adoption is void.

76.     As shown by the Order and Decree of Adoption, the Charleston County, South Carolina Family Court did not hold a "hearing" or make an investigation as required by Section 1120. Although Aimee was a necessary party to the adoption, she was not present and did not testify in person before the court. Without Aimee present, there was no "hearing" as required by the statute, which permitted James L. Parris, Esq. and Samuel S. Parris to commit the fraud upon the Family Court.

77.     Even if the Order and Decree of Adoption of the Charleston County South Carolina Family Court was not void for fraud and lack of jurisdiction, the Order and Decree of Adoption did not create rights of inheritance under South Carolina law or under Alabama law for any purpose.

{B0975244 1}                                        23

78.     Section 1120 excludes adult adoptions from almost all of the procedural requirements and legal consequences that apply to the adoption of a minor child, by providing that "[t]he provisions of [S.C. Code] Section 62–2–109 and Sections 63–9–30 [definitions] through 63–9–760, excluding Section 63–9–740 [Itemized accounting of disbursements by petitioner], do not apply to the adoption of an adult person. *See Gorman v. South Carolina Reinsurance Facility*, 333 S.C. 696, 511 S.E.2d 98 (S.C. Ct. App. 1998).

79.     By stating that "[t]he provisions of Section 62-2-109 ... do not apply to the adoption of an adult person," Section 1120 provides that, without an express finding otherwise, the adoption of an adult person does not establish a "relationship of parent and child" for purposes of intestate succession. Section 1120, however, permits an order decreeing the adoption of an adult person to create a relationship of parent and child for purposes of intestate succession, "if the court finds that it is in the best interests of the persons involved ... [for the] decree of adoption [to have] the legal consequences stated in Section 62–2–109."

80.     Because the Order and Decree of Adoption did not find it in the best interests of Samuel S. Parris to terminate Samuel S. Parris's right to inherit from his natural mother, Shannon Parris, for purposes of intestacy, or in the best interests of Aimee and/or Samuel S. Parris to create in Samuel S. Parris the right to inherit from Aimee, for purposes of intestacy, which are the "legal consequences stated in Section 62-2-109," or otherwise state a finding that applying the legal consequences of Section 109 to the adoption of Samuel S. Parris by Aimee was in the best interest of Samuel S.

Parris and/or Aimee, as expressly stated by Section 1120, "[t]he provisions of Section 62-2-109 ... do not apply to the adoption," if any, effected by the Order and Decree of Adoption.

81.     Therefore, the Order and Decree of Adoption did not:

a.     terminate Samuel S. Parris's rights to inherit from his mother, Shannon Parris, in intestacy;

b.     create any right of Samuel S. Parris to inherit from Aimee for purposes of intestacy under South Carolina law or Alabama law;

c.     make Samuel S. Parris Aimee's "lineal descendant" under the terms of Aimee's Alabama Land Trust or otherwise create any right in Samuel S. Parris to become a beneficiary of Aimee's Alabama Land Trust; or

d.     entitle Samuel S. Parris to any distribution from Aimee's Alabama Land Trust or any other trust held for Aimee's benefit.

82.     The Trustors intended the Alabama Land Trust, including Aimee's Alabama Land Trust, to continue for multiple generations after the death of the Trustors' grandchildren, including Aimee. The Trust Instrument defines "lineal descendants" as biological descendants and does not include persons adopted by biological descendants of the Trustors. Section I of the Trust Instrument, titled "Definitions" states in paragraph 2:

> "Lineal descendants" shall include those hereafter *born*, either before or after trustor's death, as well as those now in existence. (emphasis added)

{80975244 1}                          25